Mark F. James (5295)
Mitchell A. Stephens (11775)
JAMES DODGE RUSSELL & STEPHENS, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
     mjames@jdrslaw.com
     mstephens@jdrslaw.com

*Counsel for Lead Plaintiffs and the Class*

[Additional counsel listed on signature page]

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| IN RE VIVINT SOLAR, INC. SECURITIES LITIGATION | Case No. 2:20-cv-00919-JNP-CMR<br><br>District Judge: Jill N. Parrish<br>Magistrate Judge Cecilia M. Romero |

### LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL
### OF CLASS ACTION SETTLEMENT, PLAN OF ALLOCATION, AND
### CERTIFICATION OF SETTLMENT CLASS, AND SUPPORTING MEMORANDUM

Date:  March 31, 2022

## TABLE OF CONTENTS

RELIEF SOUGHT AND GROUNDS THEREFOR ................................................................... 1

I.      INTRODUCTION ......................................................................................................... 1

II.     PRELIMINARY APPROVAL AND CLASS NOTICE ................................................... 3

III.    ARGUMENT ................................................................................................................. 4

        A.      The Settlement is Fair, Reasonable, and Adequate Warranting Final
                Approval ............................................................................................................ 4

                1.      Legal Standards ..................................................................................... 4

                2.      Plaintiffs and Lead Counsel Have Adequately Represented the
                        Settlement Class Satisfying Rule 23(e)(2)(A) ........................................ 6

                3.      The Settlement Is the Result of Fair, Arm's-Length Negotiations
                        Satisfying Rule 23(e)(2)(B) and the First Tenth Circuit Factor ................. 7

                4.      The Settlement Is Fair, Reasonable and Adequate Considering the
                        Costs, Risks, and Delays Satisfying Rule 23(e)(2)(C)(i) and the
                        Second and Third Tenth Circuit Factors ................................................. 9

                5.      The Remaining Tenth Circuit and Rule 23(e)(2) Factors Support
                        Final Approval .................................................................................... 12

                        a.      The Parties Believe That the Settlement Is Fair and
                                Reasonable Satisfying the Fourth Tenth Circuit Factor ................ 12

                        b.      The Reaction of the Settlement Class Members Supports
                                Approval ................................................................................. 13

                        c.      The Remaining 23(e)(2) Factors ................................................ 13

        B.      The Plan of Allocation Is Fair, Reasonable, and Adequate and Should Be
                Approved .......................................................................................................... 15

        C.      Notice to the Settlement Class Complied with Rule 23, the PSLRA, and
                Due Process ...................................................................................................... 16

        D.      The Settlement Class Should be Finally Certified ................................................ 18

IV.     CONCLUSION ........................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*In re Advanced Battery Techs. Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ....................................................................................... 9

*In re Biolase, Inc. Sec, Litig.*,
  No. SACV 13-1300-JLS (FFMx), 2015 U.S. Dist. LEXIS 189232
  (C.D. Cal. June 5, 2015) ................................................................................................. 12

*Campbell v. C.R. England, Inc.*,
  No. 2:13-cv-00262, 2015 U.S. Dist. LEXIS 134235 (D. Utah Sept. 30, 2015)........................ 7

*City P'ship Co. v. Jones Intercable, Inc.*,
  213 F.R.D. 576 (D. Colo. Aug. 23, 2002) ....................................................................... 18

*In re Crocs, Inc. Sec. Litig.* ("*Crocs I*"),
  306 F.R.D. 672 (D. Colo. 2014) ............................................................................... *passim*

*In re Crocs, Inc. Sec. Litig.* ("*Crocs II*"),
  No. 07-cv-02351-PAB-KLM, 2014 U.S. Dist. LEXIS 134396
  (D. Colo. Sept. 18, 2014) ................................................................................................. 9

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001)................................................................................................ 8

*DeJulius v. New England Health Care Emps Pension Fund*,
  429 F.3d 935 (10th Cir. 2005) ....................................................................................... 17

*Eminence Capital, LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) ....................................................................................... 10

*Glickenhaus & Co. v. Household Int'l, Inc.*,
  787 F.3d 408 (7th Cir. 2015) ......................................................................................... 10

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................................... 16

*Gottlieb v. Wiles*,
  11 F.3d 1004 (10th Cir. 1993) ....................................................................................... 11

*Guevoura Fund Ltd. v. Sillerman*,
  No. 1:15-cv-07192-CM, 2019 U.S. Dist. LEXIS 218116 (S.D.N.Y. Dec. 18, 2019) ............. 12

*Helfer v. Wells Fargo & Co.*,
  No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 150292 (N.D. Cal. Sept. 4, 2018) .................. 15

*Jiangchen v. Rentech, Inc.*,
  No. CV 17-1490-GW(FFMx), 2019 U.S. Dist. LEXIS 180474 (C.D. Cal. Oct. 10, 2019) ..... 15

*Kuraica v. Dropbox, Inc.*,
  No. 19-cv-06348-BLF, 2021 U.S. Dist. LEXIS 235394 (N.D. Cal. Dec. 8, 2021) .................. 17

*Lucas v. Kmart Corp.*,
  234 F.R.D. 688 (D. Colo. 2006) ...................................................................................... 7

*Matrixx Initiatives, Inc. v. Siracusano*,
  563 U.S. 27 (2011)....................................................................................................... 10

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
  No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 9450 (S.D.N.Y. Jan. 31, 2007) ................. 12

*In re Molycorp, Inc. Sec. Litig.*,
  No. 12-cv-00292-RM-KMT, 2017 U.S. Dist. LEXIS 215174 (D. Colo. Feb. 12, 2017)........... 8

*New England Health Care Emps. Pension Fund v. Woodruff*,
  520 F.3d 1255 (10th Cir. 2008) ...................................................................................... 4

*O'Dowd v. Anthem, Inc.*,
  No. 14-cv-02787-KLM-NYW, 2019 U.S. Dist. LEXIS 153610
  (D. Colo. Sept. 9, 2019) ......................................................................................... 5, 7, 9

*Peace Officers' Annuity and Benefit Fund of Ga. v. DaVita Inc.*,
  No. 17-cv-0304-WJM-NRN, 2021 U.S. Dist. LEXIS 71038 (D. Colo. Apr. 13, 2021)....... 5, 13

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
  625 F. Supp. 2d 1143 (D. Colo. 2009).......................................................................... 9, 10

*Rothe v. Battelle Mem'l Inst.*,
  No. 1:18-cv-03179-RBJ, 2021 U.S. Dist. LEXIS 117836 (D. Colo. June 24, 2021) .............. 11

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
  314 F.3d 1180 (10th Cir. 2002) .................................................................................. 4, 12

*Schuler v. Meds. Co.*,
  No. 14-1149 (CCC), 2016 U.S. Dist. LEXIS 82344 (D.N.J. June 23, 2016) .......................... 12

*Shaw v. Interthinx, Inc.*,
  No. 13-cv-01229-REB-NYW, 2015 U.S. Dist. LEXIS 52783 (D. Colo. Apr. 21, 2015)..... 4, 14

*Springer v. Code Rebel Corp.*,
    No. 16-cv-3492 (AJN), 2018 U.S. Dist. LEXIS 61155 (S.D.N.Y. Apr. 10, 2018) .................. 12

*In re Sprint Corp. ERISA Litig.*,
    443 F. Supp. 2d 1249 (D. Kan. 2006) .................................................................................... 11

*Strougo v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003) .................................................................................... 11

*Sundunagunta v. NantKwest, Inc.*,
    No. CV 16-1947-MWF (JEMx), 2019 U.S. Dist. LEXIS 81337 (C.D. Cal. May 13, 2019) ..... 6

*In re Thornburg Mortg., Inc. Sec. Litig.*,
    912 F. Supp. 2d 1178 (D.N.M. 2012) ............................................................................... 10, 14

*Turnofsky v. electroCore, Inc.*,
    Civ. No. 19-18400, 2020 U.S. Dist. LEXIS 72313 (D.N.J. Apr. 24, 2020) .............................. 6

*Tuten v. United Airlines, Inc.*,
    41 F. Supp. 3d 1003 (D. Colo. 2014) ....................................................................................... 4

*Vaccaro v. New Source Energy Partners L.P.*,
    No. 15 CV 8954 (KMW), 2017 U.S. Dist. LEXIS 205785 (S.D.N.Y. Dec. 14, 2017) .............. 7

*Voulgaris v. Array Biopharma Inc.*,
    No. 17-cv-02789-KLM, 2021 U.S. Dist. LEXIS 249646 (D. Colo. Dec. 3, 2021) .... 5, 6, 13, 18

**Rules**

Fed. R. Civ. P. 23 ....................................................................................................... *passim*

**RELIEF SOUGHT AND GROUNDS THEREFOR**

Pursuant to Federal Rule of Civil Procedure Rule 23(e) ("Rule 23"), Lead Plaintiffs Billy Wallace and Kyu S. Jang (together, "Plaintiffs"), on behalf of themselves and the Settlement Class,[1] respectfully move the Court for an order: (i) finally approving the proposed Settlement of the above-captioned action (the "Action") against Vivint Solar, Inc. ("Vivint Solar" or the "Company"), David Bywater, and Dana Russell (collectively, "Defendants")[2] on the terms and conditions set forth in the Stipulation; (ii) finally approving the proposed plan for allocating the Settlement proceeds to the Settlement Class (the "Plan of Allocation"); (iii) finally approving the method of providing notice to the Settlement Class; and (iv) finally certifying the Settlement Class for settlement purposes.

## I.    INTRODUCTION

Subject to this Court's approval, the proposed Settlement resolves all claims alleged in the Action against Defendants in exchange for a $1,250,000.00 cash payment to the Settlement Class. Plaintiffs and their counsel, Bragar Eagel & Squire, P.C. ("Bragar Eagel" or "Lead Counsel"), respectfully submit that the Settlement is an excellent result for the Settlement Class.    The

---

[1]    All capitalized terms not defined herein shall have the same meaning as set forth in the Stipulation and Agreement of Settlement dated November 4, 2021 (ECF No. 87-2) (the "Stipulation" or the "Settlement") or the Declaration of Lawrence P. Eagel in Support of (1) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement, Plan of Allocation, and Certification of Settlement Class, and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Eagel Declaration" or "Eagel Decl."), filed concurrently herewith.  Unless otherwise noted, all emphasis is added, all internal quotations and citations are omitted, and all citations to "¶ __" and "Ex." refer, respectively, to paragraphs in, and exhibits to, the Eagel Declaration.

[2]  Lead Counsel has conferred with Defendants, and Defendants do not oppose the request for final approval of the Settlement and take no position on the proposed plan of allocation or fee request.

1

Settlement results from vigorous litigation and extensive arm's-length negotiations among the Parties with the assistance of a highly respected mediator, Greg Danilow, Esq. ("Danilow") of Phillips ADR.

As described below and in the Eagel Declaration,[3] Plaintiffs and Lead Counsel had a well-developed understanding of the strengths and weaknesses of the case, enabling them to appropriately evaluate the Settlement's fairness, reasonableness, and adequacy. The Settlement is a fair and reasonable compromise given the risks and expenses of continued litigation. While Plaintiffs and Lead Counsel believe that the claims have merit, there is no guarantee of success. Weighed against such risks, the Settlement of $1.25 million, which represents approximately 48% of the upper end of likely potential recovery if successful on all claims through trial, is an outstanding and immediate result for the Settlement Class, and well above the average range of recoveries in similar actions.

For the reasons discussed herein, Plaintiffs and Lead Counsel believe that the proposed Settlement is in the best interests of the Settlement Class and is fair, reasonable, and adequate. It satisfies the requirements of Rule 23 and the Tenth Circuit and provides a significant recovery for the Settlement Class. The reaction of the Settlement Class further confirms the fairness, reasonableness, and adequacy of the Settlement. Specifically, to date, no objections have been received from any Settlement Class member and only one request for exclusion has been received.

---

[3] The Eagel Declaration is an integral part of this submission and, for the sake of brevity in this motion, the Court is referred to it for factual and procedural background, a detailed history of the efforts undertaken by Plaintiffs and Lead Counsel, the settlement negotiations, dissemination of Notice, further factors bearing on the fairness and reasonableness of the Settlement and Plan of Allocation, and Lead Counsel's request for an award of attorneys' fees and expenses.

Accordingly, Plaintiffs respectfully request that the Court grant final approval of the Settlement and certify the Settlement Class for purposes of settlement only pursuant to Rules 23(a) and 23(b)(3).

Plaintiffs also requests that the Court approve the proposed Plan of Allocation, as set forth in the Notice published on the Settlement website. The Plan of Allocation, which was developed by Lead Counsel in consultation with Plaintiffs' damages experts, fairly distributes the Net Settlement Fund in accordance with the claims in this litigation, providing each Settlement Class member who files a valid claim a *pro rata* share based upon his or her recognized loss. It is substantively similar to plans that have been approved and used to allocate recoveries in other securities class actions. Accordingly, the Plan of Allocation is fair, reasonable, and adequate and warrants final approval.

## II.    PRELIMINARY APPROVAL AND CLASS NOTICE

On November 30, 2021, the Court granted preliminary approval of the Settlement. ECF No. 88 (the "Preliminary Approval Order"). The Court also approved the proposed forms of Notice. *Id*. at ¶¶ 3, 10. Pursuant to and in compliance with the Preliminary Approval Order, beginning on December 20, 2021, the Court-appointed Claims Administrator, A.B. Data, Ltd. ("A.B. Data"), caused the Postcard Notice to be mailed to potential Settlement Class members. *See* Ex. A, ¶¶ 2-4, 6-7 (Declaration of Jack Ewashko of A.B. Data ("Ewashko Decl.")). As of March 30, 2022, 20,920 Postcard Notices have been mailed. *Id.* at ¶ 7. In compliance with the Court's Preliminary Approval Order, the Summary Notice was also published both in print and transmitted over *PR Newswire*, and the Notice and Claim Form posted on A.B. Data's website as described further below. *Id.* at ¶ 8.

3

### III.    ARGUMENT

#### A.    The Settlement is Fair, Reasonable, and Adequate Warranting Final Approval

##### 1.    Legal Standards

"Public policy strongly favor[s] the pretrial settlement of class action lawsuits . . . ." *New England Health Care Emps. Pension Fund v. Woodruff*, 520 F.3d 1255, 1258 (10th Cir. 2008). This policy and the presumption favoring voluntary settlement holds even more force in complex class actions such as this one "where substantial judicial resources can be conserved by avoiding formal litigation." *Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1007 (D. Colo. 2014). For these reasons, in evaluating the fairness of a settlement, courts should neither decide the merits of the case, nor substitute their judgment for that of the parties who negotiated the settlement. *Shaw v. Interthinx, Inc.*, No. 13-cv-01229-REB-NYW, 2015 U.S. Dist. LEXIS 52783, at *6-7 (D. Colo. Apr. 21, 2015).

Approval of a proposed settlement is within the sound discretion of the Court. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187 (10th Cir. 2002). Pursuant to Rule 23(e) and the Tenth Circuit, a class action settlement is entitled to approval if it is "fair, reasonable, and adequate." *Rutter*, 314 F.3d at 1186. In making this assessment, the Tenth Circuit states that courts should evaluate four factors:

(1)    whether the proposed settlement was fairly and honestly negotiated;

(2)    whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

(3)    whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

(4)    the judgement of the parties that the settlement is fair and reasonable.

*Rutter*, 314 F.3d at 1188.

In 2018, Rule 23(e) was amended, adding specific factors as well for courts to consider in assessing a settlement.  These factors include:

(A)    whether the class representatives and class counsel have adequately represented the class;

(B)    whether the proposal was negotiated at arm's length;

(C)    whether the relief provided for the class is adequate, taking into account:

    i.    the costs, risks, and delay of trial and appeal;

    ii.    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    iii.    the terms of any proposed award of attorneys' fees, including timing of payment; and

    iv.    any agreement required to be identified under Rule 23(e)(3); and

(D)    whether the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *Peace Officers' Annuity and Benefit Fund of Ga. v. DaVita Inc.*, No. 17-cv-0304-WJM-NRN, 2021 U.S. Dist. LEXIS 71038, at *8-9 (D. Colo. Apr. 13, 2021).

The Rule 23(e) amendment was "not meant to displace" a circuit's factors, and courts in the Tenth Circuit have continued to address the Circuit's factors as well as those under Rule 23(e). *Id*. at *9.  As there is substantial overlap in the Rule 23(e) and Tenth Circuit factors, an analysis under one set of factors with additional analysis as needed for non-overlapping factors is appropriate.  *Voulgaris v. Array Biopharma Inc.*, No. 17-cv-02789-KLM, 2021 U.S. Dist. LEXIS 249646, at *15-16 (D. Colo. Dec. 3, 2021) (considering "the Rule 23(e)(2) factors as the main tool in evaluating the propriety of the settlement" due to the large overlap with the Tenth Circuit factors as "only the fourth [Tenth Circuit] factor [is] not [] subsumed into the new Rule 23"); *O'Dowd v. Anthem, Inc.*, No. 14-cv-02787-KLM-NYW, 2019 U.S. Dist. LEXIS 153610, at *35-37 (D. Colo. Sept. 9, 2019) (considering Tenth Circuit factors first and then non-overlapping Rule 23(e)(2)

5

factors).  The Settlement here satisfies each of the Rule 23(e)(2) factors, as well as the Tenth

Circuit factors, and therefore warrants the Court's final approval.

### 2.    Plaintiffs and Lead Counsel Have Adequately Represented the Settlement Class Satisfying Rule 23(e)(2)(A)

Plaintiffs and Lead Counsel have adequately represented the Settlement Class.  Plaintiffs'

interests here are the same as other Settlement Class members having purchased shares of the same

stock, based on the same materially false and misleading statements or omissions alleged to be

made by Defendants, and having the same interest in obtaining the largest recovery possible.

*Array*, 2021 U.S. Dist. LEXIS 249646, at *16-17 (finding "nothing in the record to suggest that

Plaintiffs have antagonistic interests; rather, Plaintiffs' interest in obtaining the largest-possible

recovery" is the same as all class members).  Plaintiffs monitored and participated in the litigation,

maintaining regular contact with Lead Counsel regarding the Action's progress, and evaluated and

support the proposed Settlement.  *See* Exs. B and C.

Plaintiffs also adequately represented the Settlement Class by selecting qualified counsel.

Lead Counsel, Bragar Eagel, has substantial experience in litigating shareholder class actions and

other complex litigation, with a long and successful track record in such cases.  *See* ECF No. 87-

3 (Bragar Eagel firm résumé.); *see also Turnofsky v. electroCore, Inc.*, Civ. No. 19-18400, 2020

U.S. Dist. LEXIS 72313, at *16 (D.N.J. Apr. 24, 2020) (appointing Bragar Eagel as lead counsel,

noting the firm's experience with securities class actions); *Sundunagunta v. NantKwest, Inc.*, No.

CV 16-1947-MWF (JEMx), 2019 U.S. Dist. LEXIS 81337, at *11-12 (C.D. Cal. May 13, 2019)

(approving $12 million settlement, noting Bragar Eagel and other class counsel have "extensive

experience in securities fraud litigation and class actions").[4]  Lead Counsel adequately represented the Settlement Class by, among other things, thoroughly investigating the allegations in the Complaint, drafting the Complaint, consulting with damages experts, and fully analyzing the facts and legal issues in anticipation of Defendants' motion to dismiss and in preparing Plaintiffs' mediation statement.  ¶¶ 5, 18-28, 46; *Vaccaro v. New Source Energy Partners L.P.*, No. 15 CV 8954 (KMW), 2017 U.S. Dist. LEXIS 205785, at *15 (S.D.N.Y. Dec. 14, 2017) (although no "formal discovery" the investigation of counsel permitted reasonable assessment of settlement). Accordingly, Bragar Eagel was well-informed about the strengths and weaknesses of the Action, enabling them to appropriately evaluate the Settlement's fairness, reasonableness, and adequacy. *See also O'Dowd*, 2019 U.S. Dist. LEXIS 153610, at *43 ("effective representation of the class is demonstrated by the favorable settlement that was reached").

### 3.    The Settlement Is the Result of Fair, Arm's-Length Negotiations Satisfying Rule 23(e)(2)(B) and the First Tenth Circuit Factor

Where a settlement results from arm's-length negotiations between experienced counsel, there is strong presumption that the settlement is fair, adequate, and reasonable.  *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006); *Campbell v. C.R. England, Inc.*, No. 2:13-cv-00262, 2015 U.S. Dist. LEXIS 134235, at *14 (D. Utah Sept. 30, 2015) ("Arm's length bargaining between represented parties weighs in favor of finding a settlement reasonable.").  The Settlement here was only achieved after arm's-length negotiations between well-informed and experienced

---

[4]  Plaintiffs are also represented by local Utah counsel, James Dodge Russell & Stephens P.C., who likewise has substantial experience in complex litigation.  *See* ECF No. 87-4 (firm résumé).

counsel on both sides,[5] and overseen by Danilow, a well-respected and experienced mediator. *E.g.*, ¶¶ 5, 24-27, 45, 67, 70.

The Settlement negotiations included a full-day mediation with Danilow on May 19, 2021. ¶ 26. Prior to the mediation, the Parties prepared and submitted detailed mediation statements presenting the strengths and weaknesses of their positions. ¶ 25. After agreeing in principle to the Settlement, the Parties worked extensively on negotiating the final terms of the Settlement. ¶ 27. The extensive and arm's-length nature of the settlement negotiations and the involvement of an experienced mediator support the conclusion that the Settlement is fair, adequate, and reasonable. *See, e.g.*, *In re Molycorp, Inc. Sec. Litig.*, No. 12-cv-00292-RM-KMT, 2017 U.S. Dist. LEXIS 215174, at *13 (D. Colo. Feb. 15, 2017) ("Utilization of an experienced mediator during the settlement negotiations supports a finding that the settlement is reasonable, was reached without collusion and should therefore be approved."); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure").

Moreover, as noted above and detailed in the Eagel Declaration (¶¶ 5, 18-25, 46), prior to settlement negotiations, Lead Counsel had, among other things: (i) analyzed, *inter alia*, Vivint Solar's public filings with the U.S. Securities and Exchange Commission, press releases, conference call transcripts, and other reports and news articles concerning Vivint Solar; (ii) consulted with a damages expert; (iii) drafted the detailed Complaint; (iv) analyzed and addressed Defendants' anticipated motion to dismiss arguments; and (v) drafted and exchanged a detailed

---

[5] Defendants are represented by sophisticated counsel at Latham & Watkins LLP.

mediation statement setting forth the facts and strengths of Action and potential damages  As part of Lead Counsel's investigation, investigators for Lead Counsel also conducted interviews with former Vivint Solar employees.  Thus, Lead Counsel was sufficiently informed of the Action's strengths and weaknesses and well-positioned to evaluate the appropriateness of any proposed settlement and its terms.  *See, e.g.*, *In re Crocs, Inc. Sec. Litig.* ("*Crocs I*"), 306 F.R.D. 672, 690 (D. Colo. 2014) (finding settlement fairly negotiated although "no opportunity to conduct formal discovery"); *In re Advanced Battery Techs. Inc. Sec. Litig.*, 298 F.R.D. 171, 177 (S.D.N.Y. 2014) (noting focus is on plaintiffs' ability to evaluate case and settlement and finding plaintiffs were able to do so although "no merits discovery occurred").

Accordingly, there is no evidence indicating that the Settlement is anything but the product of informed, fair and honest arm's-length negotiations among experienced counsel.

### 4.  The Settlement Is Fair, Reasonable and Adequate Considering the Costs, Risks, and Delays Satisfying Rule 23(e)(2)(C)(i) and the Second and Third Tenth Circuit Factors

"Litigating an action under the PSLRA is not a simple undertaking."  *In re Crocs, Inc. Sec. Litig.* ("*Crocs II*"), No. 07-cv-02351-PAB-KLM, 2014 U.S. Dist. LEXIS 134396, at *8 (D. Colo. Sept. 18, 2014); *see also In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1143, 1149 (D. Colo. 2009) ("There are few simple class action cases involving securities laws.").  This Action is no exception.  Here, "serious questions of law and fact exist where disputes between the parties . . . could significantly impact this case if it were litigated."  *O'Dowd*, 2019 U.S. Dist. LEXIS 153610, at *38.

The principal allegations in the Action are based on Section 10(b) of the Securities Exchange Act of 1934 which requires a plaintiff to prove falsity, scienter and loss causation,

9

among other things. *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011). As detailed in the Eagel Declaration (¶¶ 19-20), Defendants would have vigorously challenged Plaintiffs on complex issues relating to falsity and scienter, at a minimum, on motion to dismiss. While Plaintiffs believe they could successfully establish the required Section 10(b) elements, there is no guarantee that Plaintiffs would prevail on the anticipated motion to dismiss, particularly in light of the strict pleading standards of the PSLRA which is "not an easy standard to comply with." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). In fact, as reported by NERA Economic Consulting, securities class actions have a greater likelihood of being dismissed than settled, and between 2012 and 2021 of "the cases with a decision on a motion to dismiss, approximately 56% were granted while only 19% were denied." Ex. G at p. 14.

Overcoming a motion to dismiss would not end Plaintiffs' challenges. *Qwest Commc'ns*, 625 F. Supp. 2d at 1138 ("The accounting issues, the scienter issues, the causation issues, and the damages issues all are complex and problematic. Presenting these issues to a jury would create substantial risks for all parties, including the plaintiffs."). Plaintiffs would then face, *inter alia*, extensive fact and expert discovery, contested motions for class certification and summary judgment, and trial with each stage of the litigation posing additional risks. *Crocs I*, 306 F.R.D at 691 (plaintiffs had to "consider their likelihood of success certifying a relevant class, surviving summary judgment, and winning at trial"); *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1242 (D.N.M. 2012) ("Damages in this case, as is common in securities class actions, would likely have been reduced to a 'battle of the experts,' and it is virtually impossible to predict with any certainty which testimony would be credited."); *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing jury verdict awarding $2.46 billion in securities fraud

10

action on loss causation and certain alleged misstatements and remanding for a new trial). In short, continuing litigation would present substantial risks and likely take years, with the addition of extensive costs. *Strougo v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery.").

The value of the immediate recovery under the $1.25 million Settlement significantly outweighs "'the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation.'" *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1261 (D. Kan. 2006) (quoting *Gottlieb v. Wiles*, 11 F.3d 1004, 1015 (10th Cir. 1993)). This is particularly true here as according to the damages experts retained by Lead Counsel, when using a two-trader multi-day approach, the immediate recovery represents approximately 48% of the maximum potential recoverable damages. ¶ 54. This is an exceptional result for the Settlement Class which "ensures the class members will receive reasonable compensation in light of the uncertainties [and risks] of litigating to a judgment" as detailed immediately above. *Rothe v. Battelle Mem'l Inst.*, No. 1:18-cv-03179-RBJ, 2021 U.S. Dist. LEXIS 117836, at *19-20 (D. Colo. June 24, 2021).

The $1.25 million recovery achieved here, representing 48% of upper end of estimated damages, far exceeds the median ratio of settlement amounts to investors losses for securities actions. *See* Ex. G at pp. 23-24 (median ratio of securities action settlement amounts to investor losses from 2012 through 2021 ranged from 1.5% to 2.5%; for settlements with damages below $20 million the median ratio was 26.2%). Courts have readily approved securities class action

11

settlements with recoveries dwarfing the 48% recovery here. *See, e.g.*, *Springer v. Code Rebel Corp.*, No. 16-cv-3492 (AJN), 2018 U.S. Dist. LEXIS 61155, at *12 (S.D.N.Y. Apr. 10, 2018) (approving $1 million settlement representing 16.67% of estimated damages); *Schuler v. Meds. Co.*, No. 14-1149 (CCC), 2016 U.S. Dist. LEXIS 82344, at *23-24 (D.N.J. June 23, 2016) (approving $4.25 million securities fraud settlement reflecting 4% of recoverable damages which "falls squarely within the range of previous settlement approvals"); *In re Biolase, Inc. Sec, Litig.*, No. SACV 13-1300-JLS (FFMx), 2015 U.S. Dist. LEXIS 189232, at *22-23 (C.D. Cal. June 5, 2015) (finding recovery of 8% of damages a "substantial benefit to the class" noting it "equals or surpasses the recovery in many other securities class actions"); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 9450, at *33 (S.D.N.Y. Jan. 31, 2007) (recovery of approximately 6.25% was "at the higher end of the range of reasonableness of recovery in class action[] securities litigations"). *See also Guevoura Fund Ltd. v. Sillerman*, No. 1:15-cv-07192-CM, 2019 U.S. Dist. LEXIS 218116, at *29-30 (S.D.N.Y. Dec. 18, 2019) (noting that settlement representing 57% recovery was "***well above any range of reasonableness***").

In sum, the recovery here far outweighs the risks, costs and uncertainties of continued litigation strongly supporting approval of the Settlement.

### 5.    The Remaining Tenth Circuit and Rule 23(e)(2) Factors Support Final Approval

#### a.    The Parties Believe That the Settlement Is Fair and Reasonable Satisfying the Fourth Tenth Circuit Factor

The final Tenth Circuit factor, the judgment of the parties that the settlement is fair and reasonable, also weighs in favor of approving the Settlement. *Rutter*, 314 F.3d at 1188. First,

12

Plaintiffs fully support the Settlement. *See* Exs. B and C, ¶ 5. Second, the Settlement was reached only after good faith arm's-length negotiations between counsel experienced in securities litigation. *E.g.*, ¶¶ 5, 24-27, 45, 67, 70. Lead Counsel, who is well-informed about the strengths and weaknesses of the Action, firmly believes the Settlement is in the best interests of the Settlement Class and that it represents an excellent recovery. ¶¶ 4, 53. *Array*, 2021 U.S. Dist. LEXIS 249646, at *29 ("[c]ounsels' judgment as to the fairness of the agreement is entitled to considerable weight").

### b.    The Reaction of the Settlement Class Members Supports Approval

In accordance with the Preliminary Approval Order, as of March 30, 2022, A.B. Data has mailed over 20,920 Postcard Notices to prospective Settlement Class members and nominees, and issued the Summary Notice. Ewashko Decl., ¶¶ 7-8. Although the opt-out/exclusion and objections deadlines have not yet passed,[6] to date, no objections have been received and only one Settlement Class member has requested an exclusion. ¶¶ 7, 33, 42; Ewashko Decl., ¶¶ 11-12. This reaction "suggests that the Class overwhelmingly supports the settlement" and weighs in favor of final approval. *Array*, 2021 U.S. Dist. LEXIS 249646, at *28 (approving settlement where one objection); *DaVita*, 2021 U.S. Dist. LEXIS 71038, at *15 (finding significant in approving settlement that no objections and only one valid exclusion request).

### c.    The Remaining 23(e)(2) Factors

Rule 23(e)(2)(C)(ii)-(iv) considers whether the relief is adequate, taking into account "the effectiveness of any proposed method of distributing relief to the class, including the method of

---

[6] The deadline for objections and exclusions is April 14, 2022. Plaintiffs' reply, which is to be filed with the Court on or before April 28, 2022, will address any objections or exclusion requests.

processing class-member claims;" "the terms of any proposed award of attorney's fees, including timing of payment;" and "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv).

First, the procedures for processing the claims of the Settlement Class and distributing the Settlement proceeds to eligible claimants here are widely used in securities class action litigation. The proceeds of the Settlement will be distributed to Settlement Class members who submit a valid and timely claim to the Court-appointed Claims Administrator, A.B. Data. A.B. Data will provide claimants with an opportunity to cure any deficiencies in the claim or request review of the denial of their claim by the Court and will then distribute to claimants their *pro rata* share of the Net Settlement Amount upon approval of the Court. Stip., ¶ 31. If after nine months from the initial distribution and after payment of any Notice and Administration Costs, Taxes, and attorneys' fees and expenses, any funds remain in the Net Settlement Fund, a second distribution shall be made to Authorized Claimants if economically feasible. Stip., ¶ 36. Further re-distributions will be repeated until it is no longer feasible or economical to do so. *Id. See Crocs I*, 306 F.R.D. at 692-93 (finding similar process fair and reasonable).

Second, Lead Counsel has applied for a fee of 33 and 1/3% of the Settlement Fund. Lead Counsel's accompanying Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses fully details the terms of the proposed attorneys' fees and explains the reasonableness of the fee request in light of the work performed, results obtained, and risks in the litigation. *See, e.g.*, *Interthinx*, 2015 U.S. Dist. LEXIS 52783, at *18 (collecting common fund settlement cases awarding one-third or more of the settlement); *Thornburg Mortg.*, 912 F. Supp.

14

2d at 1257 ("Fees in the range of 30-40% of any amount recovered are common in complex and other cases taken on a contingency fee basis.").

Last, with respect to Rule 23(e)(2)(C)(iv), the Parties entered into a Supplemental Agreement under which Defendants may terminate the Settlement in the event that requests for exclusion from the Settlement Class reach a certain threshold.[7] *See* Stip., ¶ 43.  This type of agreement is "common in securities fraud actions and does not weigh against preliminary approval" of the Settlement.  *Jiangchen v. Rentech, Inc.*, No. CV 17-1490-GW(FFMx), 2019 U.S. Dist. LEXIS 180474, at *24 (C.D. Cal. Oct. 10, 2019).  It is standard to keep such agreements confidential.  *Helfer v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 150292, at *23 (N.D. Cal. Sept. 4, 2018) (opt-out threshold agreements are often kept confidential to "avoid the risk that one or more shareholders might use this knowledge to insist on a higher payout for themselves by threatening to break up the Settlement").  If requested, the Supplemental Agreement will be submitted to the Court *in camera*.

### B.   The Plan of Allocation Is Fair, Reasonable, and Adequate and Should Be Approved

A plan of allocation, like the settlement itself, should be approved if it is fair, reasonable, and adequate.  *Kmart*, 2006 U.S. Dist. LEXIS 51439, at *28.  The "allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel."  *Id.* at *29.

The proposed Plan of Allocation here, developed by Lead Counsel with the assistance of damages experts, is a fair and reasonable method for allocating the Net Settlement Fund among

---

[7]   Rule 23(e)(2)(D), whether the proposed Settlement treats all class members equitably, is discussed in Section III.C. below.

Settlement Class members.  ¶¶ 8, 10, 56.  The Plan of Allocation provides for distribution of the Net Settlement Fund among Authorized Claimants on a *pro rata* basis based upon each Authorized Claimant's Recognized Loss.  ¶ 57; Ex. A-2 at pp. 11-15 (Plan of Allocation).  Specifically, the Plan of Allocation calculates a "Recognized Loss" amount for each Settlement Class member which depends on several factors, including when a Settlement Class member purchased or otherwise acquired shares of Vivint Solar, when the shares were sold, the purchase and sale prices, and the per share amount of artificial inflation in the price of the Company's stock.  ¶ 57; Ex. A-2 at pp. 11-15.  Similar plans of allocation are routinely found to be fair, reasonable, and adequate. *See, e.g.*, *Crocs I*, 306 F.R.D. at 692 ("a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable")*; In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004) ("Pro-rata distribution of settlement funds based on investment loss is clearly a reasonable approach.").

Plaintiffs and Lead Counsel believe the Plan of Allocation will result in a fair and equitable distribution of the Net Settlement Fund among eligible Settlement Class members.  The Plan of Allocation was fully described in the Notice, and to date, no objections to the Plan of Allocation have been received.  *See, e.g.*, ¶¶ 8, 42, 55.  For these reasons, it is respectfully submitted that the Plan of Allocation is fair, reasonable, and adequate and should be approved by the Court.

## C.  Notice to the Settlement Class Complied with Rule 23, the PSLRA, and Due Process

The Notice provided to the Settlement Class satisfied the requirements of Rules 23(c)(2)(B) and 23(e), as well as requirements under the PSLRA and due process.  Due process and Rule 23(c)(2)(B) direct that the notice be "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).  To satisfy Rule 23(e) and due process, notice must be made "in a

16

reasonable manner" (Fed. R. Civ. P. 23(e)(1)) "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *DeJulius v. New England Health Care Emps Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005). Here, both the Notice substance and method of dissemination to potential Settlement Class members satisfied these standards.

In accordance with this Court's Preliminary Approval Order, on December 20, 2021, A.B. Data mailed 4,150 Postcard Notices using information garnered from A.B. Data's proprietary database. Ewashko Decl., ¶ 4. On January 12, 2022, A.B. Data mailed the Postcard Notice to 2 additional potential Settlement Class members identified through records received from Vivint Solar's transfer agent which were processed to eliminate duplicates and identify unique names. *Id.* at ¶ 3. Following the initial mailings, A.B. Data received additional names and addresses of potential Settlement Class members and in the aggregate, has mailed a total of 20,920 Postcard Notices as of March 30, 2022. *Id.* at ¶¶ 6-7. Additionally, on December 20, 2021, the Summary Notice was published in *Investor's Business Daily* and issued over *PR Newswire. Id.* at ¶ 8. *See Kuraica v. Dropbox, Inc.*, No. 19-cv-06348-BLF, 2021 U.S. Dist. LEXIS 235394, at *13-14 (N.D. Cal. Dec. 8, 2021) (finding similar notice plan with postcard mailing, emails to customers of nominees, electronic transmittal of summary notice and website sufficiently adequate).

The Postcard Notice directed potential Settlement Class members to the Settlement website, www.VivintSolarClassAction.com, which has been operative since December 20, 2021, and where downloadable versions of the long-form Notice and Claim Form are available. *Id.* at ¶¶ 5, 10. A.B. Data also established a case-specific, toll-free telephone helpline, 1-877-888-8653, on December 20, 2021, with an interactive voice response system and live operators, to

accommodate potential Settlement Class members with questions about the Action and the Settlement. *Id.* at ¶ 9.

The Notice provided all of the required information, including, *inter alia*: (i) a description of the nature of the Action and claims asserted; (ii) the definition of the Settlement Class; (iii) the amount of the Settlement; (iv) the reasons for and material terms of the Settlement; (v) the Plan of Allocation; (vi) the maximum amount of attorneys' fees and expenses that will be sought; (vii) the time and manner for requesting an exclusion from the Settlement Class or objecting to the Settlement, Plan of Allocation, or the requested attorneys' fees, expenses, or plaintiff incentive awards; (viii) the date, time, and place of the Settlement Hearing; (ix) the identity and contact information of the representatives of Lead Counsel and procedures for making inquiries; and (x) the binding effect of a judgment on Settlement Class members. *See* Ex. A-2 (Notice); *Array*, 2021 U.S. Dist. LEXIS 249646, at *13-14 (approving similar notice substance as adequate).

In summary, the notice program complied with the requirements of Rule 23, the PSLRA, and due process.

### D.    The Settlement Class Should be Finally Certified

"[S]ecurities claims are particularly well suited for class status because they allow for the policies behind the securities laws to be enforced in circumstances where there are numerous investors with small individual claims that otherwise would effectively be barred from litigation." *City P'ship Co. v. Jones Intercable, Inc.*, 213 F.R.D. 576, 581 (D. Colo. Aug. 23, 2002).

The Court's Preliminary Approval Order stated that the "court will likely certify the class" under Fed. R. Civ. P. 23(a) and (b)(3) for the purposes of Settlement. *See* ECF No. 88 at 1. Certification of a settlement class is proper if the class meets the four requirements of Rule 23(a),

18

namely numerosity, commonality, typicality, and adequacy of representation, and at least one subsection of Rule 23(b). *Crocs I*, 306 F.R.D. at 685. No events have occurred to alter the propriety of the Court's finding that it would likely certify the Settlement Class, and no objections to certification have been received. ¶¶ 7, 58. For the reasons stated in Lead Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Supporting Memorandum (ECF No. 87), incorporated herein by reference, and the Court's Preliminary Approval Order, Plaintiffs respectfully request that the Court grant final certification to the Settlement Class under Rules 23(a) and (b)(3), including the appointment of Plaintiffs as Class Representatives and Lead Counsel as Class Counsel for the Settlement Class.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the Settlement and Plan of Allocation and finally certify the Settlement Class for the purposes of the Settlement. Proposed orders will be submitted with Lead Counsel's reply papers after the deadline for objections has passed.

DATED: March 31, 2022                    Respectfully submitted,

**JAMES DODGE RUSSELL & STEPHENS P.C.**

/s/ *Mitchell A. Stephens*
Mitchell A. Stephens
Mark F. James
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Tel.: (801) 363-6363
mstephens@jdrslaw.com
mjames@jdrslaw.com

**BRAGAR EAGEL & SQUIRE, P.C.**
Lawrence P. Eagel (admitted *pro hac vice*)
Marion C. Passmore (admitted *pro hac vice*)

19

810 Seventh Avenue, Suite 620
New York, NY 10019
Tel: (212) 308-5858
Fax: (212) 214-0506
eagel@bespc.com
passmore@bespc.com

*Counsel for Lead Plaintiffs Billy Wallace and Kyu
S. Jang and the Class*

20

## CERTIFICATE OF SERVICE

I certify that on this 31st day of March, 2022, I electronically filed Lead Plaintiffs' Motion for Final Approval of Class Action Settlement, Plan of Allocation, and Certification of Settlement Class, and Supporting Memorandum using the Court's CM/ECF system, which will be sent electronically to all counsel of record.

/s/ *Mitchell A. Stephens*
Mitchell A. Stephens