Mark F. James (5295)
Mitchell A. Stephens (11775)
JAMES DODGE RUSSELL & STEPHENS, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
      mjames@jdrslaw.com
      mstephens@jdrslaw.com

*Counsel for Lead Plaintiffs and the Class*

[Additional counsel listed on signature page]

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| IN RE VIVINT SOLAR, INC. SECURITIES LITIGATION | Case No. 2:20-cv-00919-JNP-CMR<br><br>District Judge: Jill N. Parrish<br>Magistrate Judge Cecilia M. Romero |

## LEAD COUNSEL'S MOTION FOR AN AWARD
## OF ATTORNEYS' FEES AND REIMBURSEMENT OF
## <u>LITIGATION EXPENSES, AND SUPPORTING MEMORANDUM</u>

Date:  March 31, 2022

## TABLE OF CONTENTS

RELIEF SOUGHT AND GROUNDS THEREFOR ................................................................... 1

I.     INTRODUCTION ..................................................................................................... 1

II.    ARGUMENT ............................................................................................................. 3

    A.     Lead Counsel Is Entitled to An Award of Attorneys' Fees From the Common Fund ..................................................................................................... 3

    B.     The Requested Attorneys' Fees Are Fair and Reasonable As A Percentage of the Common Fund ..................................................................................... 4

    C.     The Johnson Factors Support the Reasonableness of the Fee Request ................... 7

        1.     The Amount Involved and Results Achieved ............................................. 8

        2.     The Novelty and Difficulty of Questions Raised by the Litigation .......... 10

        3.     The Skill Required and the Experience of Counsel .................................. 11

        4.     The Preclusion of Other Employment, Contingent Nature of the Fee, and Undesirability of the Action ....................................................... 12

        5.     The Time and Labor Expended by Plaintiffs' Counsel ........................... 14

    D.     The Reaction of the Settlement Class to Date Supports the Fee Request ............. 16

    E.     Plaintiffs' Counsel's Litigation Expenses Are Reasonable, Were Necessarily Incurred, and Should Be Reimbursed ............................................... 17

    F.     The Proposed Plaintiff Awards Are Reasonable and Should Be Granted ............ 18

III.   CONCLUSION ....................................................................................................... 20

i

## TABLE OF AUTHORITIES

**Cases**

*In re Adelphia Commc'ns Corp. Sec. and Deriv. Litig.*,
  No. 03 MDL 1529 (LMM), 2006 U.S. Dist. LEXIS 84621 (S.D.N.Y. Nov. 16, 2006) ........... 12

*Anderson v. Merit Energy Co.*,
  No. 07-cv-00916-LTB-BNB, 2009 U.S. Dist. LEXIS 100681 (D. Colo. Oct. 20, 2009) ........... 8

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
  MDL No. 1500, 2006 U.S. Dist. LEXIS 17588 (S.D.N.Y. Apr. 6, 2006) .................................. 9

*In re Bear Stearns Cos.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012) ..................................................................................... 9

*Blum v. Stenson*,
  465 U.S. 886 (1984) ............................................................................................................. 15

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ............................................................................................................... 3

*Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*,
  8 F.3d 722 (10th Cir. 1993) ................................................................................................. 18

*Brown v. Phillips Petroleum Co.*,
  838 F.2d 451 (10th Cir. 1988) ..................................................................................... 3, 7, 8

*Campbell v. C.R. England, Inc.*,
  No. 2:13-cv-00262, 2015 U.S. Dist. LEXIS 134235 (D. Utah Sept. 30, 2015) ................ *passim*

*In re Checking Account Overdraft Litig.*,
  830 F. Supp. 2d 1330 (S.D. Fla. 2011) ................................................................................ 11

*Cimarron Pipeline Constr., Inc. v. Nat'l Council on Comp. Ins.*,
  No. CIV 89-822-T, 1993 U.S. Dist. LEXIS 19969 (W.D. Okla. June 8, 1993) ........................ 5

*Cook v. Rockwell Int'l Corp.*,
  No. 90-cv-00181-JLK, 2017 U.S. Dist. LEXIS 181814 (D. Colo. Apr. 28, 2017) .................... 5

*In re Colgate-Palmolive Co. ERISA Litig.*,
  36 F. Supp. 3d 344 (S.D.N.Y. 2014) .................................................................................... 19

*In re Crocs, Inc. Sec. Litig.*,
  No. 07-cv-02351-PAB-KLM, 2014 U.S. Dist. LEXIS 134396
  (D. Colo. Sept. 18, 2014) ............................................................................................. *passim*

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336 (2005) ............................................................................................................. 9

*In re Facebook Inc., IPO Sec. and Deriv. Litig.*,
   MDL No. 12-2389, 2015 U.S. Dist. LEXIS 152668 (S.D.N.Y. Nov. 9, 2015) ....................... 15

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   No. 02-CV-3400 (CM) (PED), 2010 U.S. Dist. LEXIS 119702 (S.D.N.Y. Nov. 5, 2010) ...... 17

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) ......................................................................................... 10

*Gottlieb v. Barry.*,
   43 F.3d 474 (10th Cir. 1994) ............................................................................................... 4

*In re GSE Bonds Antitrust Litig.*,
   No. 19-cv-1704 (JSR), 2020 U.S. Dist. LEXIS 104842 (S.D.N.Y. June 16, 2020) ................. 15

*Guevoura Fund Ltd. v. Sillerman*,
   No. 1:15-cv-07192-CM, 2019 U.S. Dist. LEXIS 218116 (S.D.N.Y. Dec. 18, 2019) .......... 9, 17

*In re Hi-Crush Partners L.P. Sec. Litig.*,
   No. 12-Civ-8557 (CM), 2014 U.S. Dist. LEXIS 177175 (S.D.N.Y. Dec. 19, 2014) ................. 6

*In re iDreamSky Tech. Ltd. Sec. Litig.*,
   No. 1:15-cv-2514 (JPO), 2018 U.S. Dist. LEXIS 232237 (S.D.N.Y. Apr. 6, 2018) ................. 6

*In re Ikon Office Sols., Inc., Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000) ........................................................................................... 10

*Johnson v. Ga. Highway Express, Inc.*,
   488 F.2d 714 (5th Cir. 1974) ..................................................................................... 7, 8, 16

*Likas v. Chinacache Int'l Holdings Ltd.*,
   No. 2:19-cv-06942-JWH-SSx, 2022 U.S. Dist. LEXIS 46182 (C.D. Cal. Mar. 14 2022) ......... 6

*Lucas v. Kmart Corp.*,
   No. 99-cv-01923-JLK-CBS, 2006 U.S. Dist. LEXIS 51420 D. Colo. July 27, 2006) ....... 12, 13

*McNeely v. Nat'l Mobile Health Care, LLC*,
   No. CIV-07-933-M, 2008 U.S. Dist. LEXIS 86741 (W.D. Okla. Oct. 27, 2008) ..................... 6

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ............................................................................................... 7

*In re Mills Corp. Sec. Litig.*,
   265 F.R.D. 246 (E.D. Va. 2009) ......................................................................................... 10

*Millsap v. McDonnell Douglas Corp.*,
   No. 94-CV-633-H(M), 2003 U.S. Dist. LEXIS 26223 (N.D. Okla. May 28, 2003) ................. 4

*Mishkin v. Zynex, Inc.*,
   No. 09-cv-00780-REB-KLM, 2012 U.S. Dist. LEXIS 132405 (D. Colo. Sept. 14, 2012) ...... 16

*In re Molycorp Inc. Sec. Litig.*,
   No. 1:12-cv-00292-RM-KMT, 2017 U.S. Dist. LEXIS 233754 (D. Colo. June 16, 2017)...... 15

*O'Dowd v. Anthem, Inc.*,
   No. 14-cv-02787-KLM-NYW, 2019 U.S. Dist. LEXIS 153610 (D. Colo. Sept. 9, 2019)....... 12

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   991 F. Supp. 2d 437 (E.D.N.Y. 2014) ...................................................................................... 6

*Peace Officers' Annuity Benefit Fund of Ga. v. DaVita Inc.*,
   No. 17-cv-0304-WJM-NRN, 2021 U.S. Dist. LEXIS 131699
   (D. Colo. July 15, 2021)...................................................................................................... *passim*

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
   625 F. Supp. 2d 1133 (D. Colo. 2009).................................................................................... 10

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
   625 F. Supp. 2d 1143 (D. Colo. 2009).................................................................... 2, 10, 13, 16

*In re Revolution Lighting Techs., Inc. Sec. Litig.*,
   No. 1:19-cv-00980-JPO, 2020 U.S. Dist. LEXIS 145147 (S.D.N.Y. Aug. 11, 2020).......... 7, 19

*Rothe v. Battelle Mem'l Inst.*,
   No. 1:18-cv-03179-RBJ, 2021 U.S. Dist. LEXIS 117836 (D. Colo. June 24, 2021) ............... 18

*In re Spectranetics Corp. Sec. Litig.*,
   No. 08-cv-02048-REB-KLM, 2011 U.S. Dist. LEXIS 159436 (D. Colo. Apr. 4, 2011) ......... 13

*Shaw v. Interthinx, Inc.*,
   No. 13-cv-01229-REB-NYW, 2015 U.S. Dist. LEXIS 52783 (D. Colo. Apr. 21, 2015)... 12, 16

*Springer v. Code Rebel Corp.*,
   No. 16-cv-3492 (ATN), 2018 U.S. Dist. LEXIS 61155 (S.D.N.Y. Apr. 10, 2018) ........... 6, 7, 9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007).............................................................................................................. 4

*In re Thornburg Mortg., Inc. Sec. Litig.*,
  912 F. Supp. 2d 1178 (D.N.M. 2012) ...................................................................... 11

*Tuten v. United Airlines, Inc.*,
  41 F. Supp. 3d 1003 (D. Colo. 2014) ...................................................................... 13

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
  669 F.3d 632 (5th Cir. 2012) ................................................................................... 5

*Uselton v. Commercial Lovelace Motor Freight, Inc.*,
  9 F.3d 849 (10th Cir. 1993) ..................................................................................... 4

*Vaccaro v. New Source Energy Partners L.P.*,
  No. 15 CV 8954 (KMW), 2017 U.S. Dist. LEXIS 205785 (S.D.N.Y. Dec. 14, 2017) ........ 7, 19

*Vaszlavik v. Storage Tech. Corp.*,
  No. 95-B-2525, 2000 U.S. Dist. LEXIS 21140 (D. Colo. Mar. 9, 2000) ........................... 12, 17

*Voulgaris v. Array Biopharma Inc.*,
  No. 17-cv-02789-KLM, 2021 U.S. Dist. LEXIS 249646 (D. Colo. Dec. 3, 2021) ........... *passim*

*White Family Minerals v. EOG Res. Inc.*,
  No. 19-cv-409-KEW, 2021 U.S. Dist. LEXIS 249310 (E.D. Okla. Nov. 12, 2021) ................ 16

*In re Xcel Energy, Inc.*,
  364 F. Supp. 2d 980 (D. Minn. 2005) ...................................................................... 13

**Statutes**

15 U.S.C. § 78u-4(a) ................................................................................................ 5, 18

**Rules**

Fed. R. Civ. P. 23 .................................................................................................... 1

**RELIEF SOUGHT AND GROUNDS THEREFOR**

Pursuant to Federal Rule of Civil Procedure ("Rule") 23 and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), Court-appointed Lead Counsel, Bragar Eagel & Squire, P.C. ("Bragar Eagel" or "Lead Counsel"), respectfully moves for:   (i) an award of attorneys' fees in the amount of 33 and 1/3% of the Settlement Fund[1] on behalf of Plaintiffs' Counsel;[2] (ii) reimbursement of $30,608.91 in litigation expenses incurred by Plaintiffs' Counsel in connection with litigating the above-captioned action (the "Action") on behalf of the Settlement Class; and (iii) awards of $1,750.00 each for Lead Plaintiffs Billy Wallace and Kyu. S. Jang (together, the "Plaintiffs") for their efforts in representing the Settlement Class.

## I.    INTRODUCTION

The proposed Settlement resolves all claims against the Defendants[3] in the Action in exchange for a $1,250,000.00 cash payment pursuant to the terms of the Stipulation.  The $1.25 million Settlement represents approximately 48% of the maximum potential recovery the Settlement Class would likely be able obtain at trial, provided the claims survived a motion to

---

[1]   All capitalized terms not defined herein shall have the same meaning as set forth in the Stipulation and Agreement of Settlement dated November 4, 2021 (ECF No. 87-2) (the "Stipulation" or the "Settlement") or the Declaration of Lawrence P. Eagel in Support of (1) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement, Plan of Allocation and Certification of Settlement Class (the "Final Approval Motion"), and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Eagel Declaration" or "Eagel Decl."), filed concurrently herewith.  Unless otherwise noted, all emphasis is added, all internal quotations and citations are omitted, and all citations to "¶ __" and "Ex." refer, respectively, to paragraphs in, and exhibits to, the Eagel Declaration.

[2]   "Plaintiffs' Counsel" includes Bragar Eagel and local Utah counsel James Dodge Russell & Stephens P.C.  Any fee allocations among Plaintiffs' Counsel will in no way increase fees that are deducted from the Settlement Fund, and no other attorneys will share the awarded attorneys' fees.

[3]   "Defendants" refers collectively to Vivint Solar, Inc. ("Vivint Solar" or the "Company"), David Bywater, and Dana Russell.

dismiss, motion for summary judgment, class certification, and any challenges to damages methodology.  Plaintiffs and Lead Counsel submit that this is an outstanding result, far exceeding the median range of recoveries in similar cases, and conferring an immediate substantial benefit to the Settlement Class while avoiding significant litigation risks and costs.

Lead Counsel achieved the Settlement through hard work and diligent effort.  They conducted a thorough factual investigation in preparing the Complaint, including interviews with third-party witnesses; drafted the detailed Complaint based on the investigation; conducted extensive research regarding the applicable law and Defendants' potential defenses thereto; consulted with experts on damages; and engaged in hard-fought settlement negotiations with an experienced and respected mediator.  *See also* Eagel Decl., *e.g.*, ¶¶ 5, 18-25, 46, 64-66.[4]

In light of the outstanding recovery, and the efforts undertaken in achieving it, Lead Counsel requests a fee award of one-third of the Settlement Fund, an award that is well in-line with fee awards in the Tenth Circuit and in similar securities class actions.  Lead Counsel's request is further supported by the amount of time Plaintiffs' Counsel invested in litigating the Action, resulting in a "negative" lodestar multiplier of 0.92, a multiplier far lower than those in most common fund actions.  *See, e.g.*, *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.* ("*Qwest II*"), 625 F. Supp. 2d 1143, 1151 (D. Colo. 2009) ("[L]ead counsel who create a common fund for the benefit of a class are rewarded with fees that often are at least two times the reasonable lodestar figure,

---

[4]  The Eagel Declaration is an integral part of this submission and, for the sake of brevity in this motion, the Court is referred to it for factual and procedural background, a detailed history of the efforts undertaken by Plaintiffs and Lead Counsel, the settlement negotiations, dissemination of Notice, further factors bearing on the fairness and reasonableness of the Settlement and Plan of Allocation, and Lead Counsel's request for an award of attorneys' fees and expenses.

and in some cases reach as high as five to ten times the lodestar figure.").  Plaintiffs fully support the fee request and no objections to the fee request, or any portion of the Settlement, have been received to date from Settlement Class members.

Lead Counsel's request for reimbursement of $30,608.91 in litigation expenses is also reasonable and far below the amount stated in the Notice.  Similarly, Plaintiffs' requested service awards to compensate them for their time in serving as class representatives, which are expressly permitted under the PSLRA, are fair and reasonable.

For the reasons set forth herein, Lead Counsel respectfully submits that the requested fee award, reimbursement of litigation expenses, and service awards are fair and reasonable, and should be approved by the Court in full.

## II.   ARGUMENT

### A.   Lead Counsel Is Entitled to An Award of Attorneys' Fees From the Common Fund

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  "The common fund doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense." *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988).  Awards from a common fund also "serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature." *Voulgaris v. Array Biopharma Inc.*, No. 17-cv-02789-KLM, 2021 U.S. Dist. LEXIS 249646, at *35 (D. Colo. Dec. 3, 2021).

Courts in the Tenth Circuit regularly award attorneys' fees in securities class actions pursuant to the common fund doctrine. It is well recognized that such actions "require plaintiffs' counsel to expend substantial time and effort with no guarantee of success. In light of these difficulties, public policy supports granting attorneys fees that are sufficient to encourage plaintiffs' counsel to bring securities class actions that supplement the efforts of the SEC." *In re Crocs, Inc. Sec. Litig.*, No. 07-cv-02351-PAB-KLM, 2014 U.S. Dist. LEXIS 134396, at *16 (D. Colo. Sept. 18, 2014); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) (private securities actions are "an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the . . . SEC."). Compensating plaintiffs' counsel for the risks they take in bringing these actions is essential because "[s]uch actions could not be sustained if Lead Counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Array*, 2021 U.S. Dist. LEXIS 249646, at *36.

**B.      The Requested Attorneys' Fees Are Fair and Reasonable As A Percentage of the Common Fund**

As compensation for their efforts in creating the $1.25 million Settlement Fund, Lead Counsel seeks one-third of the recovery, or $416,666.67. Awarding attorneys' fees as a percentage of a common fund is the preferred method in the Tenth Circuit as it incentivizes attorneys to "take undesirable cases . . . assur[ing] access to the courts for all people[.]" *Millsap v. McDonnell Douglas Corp.*, No. 94-CV-633-H(M), 2003 U.S. Dist. LEXIS 26223, at *41 (N.D. Okla. May 28, 2003); *Gottlieb v. Barry*, 43 F.3d 474, 483-84 (10th Cir. 1994) (explaining that the percentage method "is less subjective than the lodestar plus multiplier approach" and that "*Uselton* implies a preference for the percentage of the fund method") (citing *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853 (10th Cir. 1993), *Id.* at 488); *Campbell v. C.R. England, Inc.*, No.

4

2:13-cv-00262, 2015 U.S. Dist. LEXIS 134235, at *16 (D. Utah Sept. 30, 2015) ("The Tenth Circuit also recognizes the propriety of the percentage-of-the fund method when awarding fees."); *Cook v. Rockwell Int'l Corp.*, No. 90-cv-00181-JLK, 2017 U.S. Dist. LEXIS 181814, at *10 (D. Colo. Apr. 28, 2017) (noting in applying the percentage method that courts recognize "that class counsel and the class should have aligned interests in this type of matter, such that counsel are both compensated for risk and rewarded for success, where, as here, the Class receives significant benefit from Class Counsel's" work).[5]  Based on the foregoing authority, the percentage method applies here.

Lead Counsel's request of one-third of the common fund is consistent with awards routinely made in the Tenth Circuit.  Indeed, "[c]ourts in the Tenth Circuit have noted that the typical fee award in complex cases is around one third of the common fund."  *Crocs*, 2014 U.S. Dist. LEXIS 134396, at *10-11 (awarding 30% of $10 million securities action settlement fund); *Cimarron Pipeline Constr., Inc. v. Nat'l Council on Comp. Ins.*, No. CIV 89-822-T, 1993 U.S. Dist. LEXIS 19969, at *4, *5 (W.D. Okla. June 8, 1993) ("Fees in the range of 30-40% of any amount recovered are common in complex and other cases taken on a contingent fee basis," and "attorneys' fees of 33 1/3% of the common fund . . . [are] consistent with prevailing case law of this circuit.").  *See also Array*, 2021 U.S. Dist. LEXIS 249646, at *36-37 (finding one-third fee request in securities action "falls within the range of fee percentages awarded" and awarding one-

---

[5]  The text of the PSLRA also supports awarding attorneys' fees in securities cases using the percentage method, providing that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered for the class.  15 U.S.C. § 78u-4(a)(6).  "Part of the reason behind the near-universal adoption of the percentage method in securities cases is that the PSLRA contemplates such a calculation." *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643 (5th Cir. 2012).

third of $8.5 million fund); *Peace Officers' Annuity Benefit Fund of Ga. v. DaVita Inc.*, No. 17-cv-0304-WJM-NRN, 2021 U.S. Dist. LEXIS 131699, at *7, *13 (D. Colo. July 15, 2021) (awarding 30% fee award for $40.5 million securities action "megafund"); *Campbell*, 2015 U.S. Dist. LEXIS 134235, at *19 (awarding 33.3% of settlement fund, noting such percentage "represents a customary contingency fee and is consistent with awards provided in similar cases") (collecting cases); *McNeely v. Nat'l Mobile Health Care, LLC*, No. CIV-07-933-M, 2008 U.S. Dist. LEXIS 86741, at *46 (W.D. Okla. Oct. 27, 2008) (approving fee of 33% of $2 million fund).

The 33 1/3% fee request here is also consistent with fee awards in comparable securities class actions. *See, e.g.*, *Likas v. Chinacache Int'l Holdings Ltd.*, No. 2:19-cv-06942-JWH-SSx, 2022 U.S. Dist. LEXIS 46182, at *14 (C.D. Cal. Mar. 14 2022) (awarding 33.3% of $1.8 million fund); *Springer v. Code Rebel Corp.*, No. 16-cv-3492 (ATN), 2018 U.S. Dist. LEXIS 61155, at *14 (S.D.N.Y. Apr. 10, 2018) (awarding fees of one-third of $1 million settlement fund); *In re iDreamSky Tech. Ltd. Sec. Litig.*, No. 1:15-cv-2514 (JPO), 2018 U.S. Dist. LEXIS 232237, at *15 (S.D.N.Y. Apr. 6, 2018) (awarding fees of 33.3% of $4.15 million fund); *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-Civ-8557 (CM), 2014 U.S. Dist. LEXIS 177175, at *33-34, *46 (S.D.N.Y. Dec. 19, 2014) (awarding 33 1/3% of $3.8 million settlement fund, stating that the percentage awarded "is consistent with percentage fees award in this Circuit and nationwide"). *See also* Ex. G at p. 27 (in the last ten years for settlements under $5 million, fees and expenses represent 34% of the settlement); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014) ("For example, it is very common to see 33% contingency fees in cases with funds of less than $10 million, and 30% contingency fees in cases with funds between $10 million and $50 million.").

Moreover, courts have also routinely awarded fees of 33 1/3% where the settlement was reached early in the litigation process, such as here, with little to no formal discovery. *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459, 463 (9th Cir. 2000) (affirming award of one-third of $1.725 million recovery where no formal discovery as counsel conducted extensive investigation and research and worked with damages and accounting experts and thus had "sufficient information to make an informed decision about the Settlement"); *In re Revolution Lighting Techs., Inc. Sec. Litig.*, No. 1:19-cv-00980-JPO, 2020 U.S. Dist. LEXIS 145147, at *7 (S.D.N.Y. Aug. 11, 2020) (awarding one-third of $2,083,333.33 settlement, in a case where no motion to dismiss was filed); *Code Rebel*, 2018 U.S. Dist. LEXIS 61155, at *10, *14-15 (awarding one-third of $1 million settlement where parties "have not engaged in formal discovery"); *Vaccaro v. New Source Energy Partners L.P.*, No. 15 CV 8954 (KMW), 2017 U.S. Dist. LEXIS 205785, at *15, *18-19 (S.D.N.Y. Dec. 14, 2017) (awarding one-third of $2.8 million settlement where "action did not proceed to formal discovery").

In sum, the percentage fee requested here is reasonable and in-line with fee awards made within the Tenth Circuit and comparable securities actions.

## C.    The Johnson Factors Support the Reasonableness of the Fee Request

The Tenth Circuit considers the factors set forth in the Fifth Circuit's decision in *Johnson v. Ga. Highway Express, Inc.* in assessing the reasonableness of a fee request. 488 F.2d 714, 717-19 (5th Cir. 1974); *Brown*, 838 F.2d at 454-55. The *Johnson* factors include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions presented by the case; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorneys due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation and ability of the attorneys; (10) the

7

undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*See, e.g.*, *Brown*, 838 F.2d at 454-55; *Campbell*, 2015 U.S. Dist. LEXIS 134235, at *16-17.

"[R]arely are all of the *Johnson* factors applicable; this is particularly so in a common fund situation." *Brown*, 838 F.2d at 455-56; *Crocs*, 2014 U.S. Dist. LEXIS 134396, at *6 (as not all *Johnson* factors may be applicable, "a court need not specifically address each" factor).  As set forth below, application of the relevant *Johnson* factors supports Lead Counsel's fee request.[6]

### 1.    The Amount Involved and Results Achieved

In determining the reasonableness of fees, the result obtained is consistently held to be the most important factor.  *Brown*, 838 F.2d at 456 (in common fund cases result obtained given greater weight); *Anderson v. Merit Energy Co.*, No. 07-cv-00916-LTB-BNB, 2009 U.S. Dist. LEXIS 100681, at *11 (D. Colo. Oct. 20, 2009) ("greatest weight should be given to the monetary results achieved for the benefits of the class").

The $1.25 million result achieved here is outstanding.  As described in the Eagel Declaration (¶¶ 47-52) and Plaintiffs' Final Approval Motion, continued litigation involved substantial risks and uncertainties.  Plaintiffs would face complex legal and factual issues, hotly disputed by Defendants as illustrated in their pre-motion to dismiss letter briefing.  ¶¶ 19-20.  To prevail on a motion to dismiss (which is no easy task),[7] and subsequently on a motion for summary

---

[6]  The customary fee and awards in similar cases are often addressed together (*see DaVita*, 2021 U.S. Dist. LEXIS 131699, at *7) and are addressed *supra* at Section II.B.  The following *Johnson* factors are not relevant to this litigation, and therefore not address herein: time limitations imposed by the client or circumstances, and the nature and length of the professional relationship with the client.

[7]  In fact, as reported by NERA Economic Consulting, securities class actions have a greater likelihood of being dismissed than settled; between 2012 and 2021 of "the cases with a decision

judgement or at trial, Plaintiffs would have to establish that the alleged misstatements and omissions were materially false and misleading, as well as Defendants' scienter. ¶¶ 47-52. "The difficulty of establishing liability is a common risk of securities litigation." *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, MDL No. 1500, 2006 U.S. Dist. LEXIS 17588, at \*39 (S.D.N.Y. Apr. 6, 2006). Plaintiffs would also have to prove loss causation and damages. *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005). In establishing damages there would likely be a "battle of the experts" where "victory is by no means assured" and the "jury could be swayed by experts for the Defendants, who could minimize or eliminate the amount of Plaintiffs' losses." *In re Bear Stearns Cos.*, 909 F. Supp. 2d 259, 267-68 (S.D.N.Y. 2012).

Faced with the above risks, the $1.25 million Settlement provides an immediate benefit to the Settlement Class with a recovery that represents approximately 48% of the maximum potential damages when using a multi-day approach. ¶ 54. The recovery of 48% of estimated damages far exceeds the median recovery in similar securities actions. *See, e.g.*, Ex. G at pp. 23-24 (median ratio of securities action settlement amounts to investor losses from 2012 through 2021 ranged from 1.5% to 2.5%; for settlements with damages below $20 million the median ratio was 26.2%); *Guevoura Fund Ltd. v. Sillerman*, No. 1:15-cv-07192-CM, 2019 U.S. Dist. LEXIS 218116, at \*29-30 (S.D.N.Y. Dec. 18, 2019) ("the Settlement represents a large percentage recovery for the Class that is ***well above any range of reasonableness*** – a minimum 57% recovery of [] best possible damages"); *Code Rebel*, 2018 U.S. Dist. LEXIS 61155, at \*12 (approving $1 million settlement representing 16.67% of estimated damages); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279

---

on a motion to dismiss, approximately 56% were granted while only 19% were denied." Ex. G at p. 14.

9

F.R.D. 151, 162-63 (S.D.N.Y. 2011) ("[T]he average settlement in securities class actions ranges from 3% to 7% of the class' total estimated losses."). This substantial percentage of damage recovery strongly supports Lead Counsel's fee request.

### 2. The Novelty and Difficulty of Questions Raised by the Litigation

"Courts have long recognized that securities class actions present inherently complex and novel issues, which are constantly evolving." *Array*, 2021 U.S. Dist. LEXIS 249646, at *39; *see also Crocs*, 2014 U.S. Dist. LEXIS 134396, at *8 ("Litigating an action under the PSLRA is not a simple undertaking, especially given the specificity required to plead such claims."); *In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA"). There are "few simple class action cases involving securities law," and this case is no exception. *Qwest II*, 625 F. Supp. 2d at 1149.

There is no doubt that this Action presented complex issues of law and fact, including the existence of false and/or misleading statements regarding Vivint Solar's sales practices and related lawsuits and investigations, made with scienter, and proof of loss causation. *In re Qwest Commc'ns Int'l, Inc. Sec. Litig. ("Qwest I")*, 625 F. Supp. 2d 1133, 1138 (D. Colo. 2009) ("the scienter issues, the causation issues, and the damages issues all are complex and problematic"). Defeating a motion to dismiss is a formidable challenge in securities actions. *DaVita*, 2021 U.S. Dist. LEXIS 131699, at *10 (noting substantial risks "especially where, as here, Plaintiffs were subject to the PSLRA's heightened pleading standard and faced the immediate possibility of an adverse decision"); *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 263 (E.D. Va. 2009) ("Elements such as scienter, reliance, and materiality of misrepresentation are notoriously difficult to

establish"). While Plaintiffs believe their claims would be borne out by the evidence, Defendants articulated defenses to Plaintiffs' allegations that the Court may have accepted in ruling on the anticipated motion to dismiss. ¶¶ 47-48. For example, Defendants claimed that Vivint Solar's risks factors warned investors of the harms alleged which courts have found sufficient to defeat falsity. ¶ 20.

Overcoming the anticipated motion to dismiss would not have ended Plaintiffs' challenges as more fully discussed in the Final Approval Motion and Eagel Declaration. ¶¶ 49-52. Accordingly, if the Action had not settled, the Settlement Class faced considerable litigation risk which would likely take years to resolve. Lead Counsel's ability to achieve a significant recovery for the Settlement Class in face of these obstacles supports the requested fee award.

### 3.    The Skill Required and the Experience of Counsel

Plaintiffs' Counsel have extensive experience prosecuting securities class actions and other complex litigation. ¶¶ 67, 70; *see also* ECF Nos. 87-3 and 87-4 (firm résumés). Plaintiffs' Counsel brought their skill and experience to this case, thus supporting the fee request. "While there are other national and local firms that do securities class actions work, the number of firms doing this work is relatively small, and requires specialized knowledge and skill, and the willingness to front expense and staff salaries for years." *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1256 (D.N.M. 2012); *see also In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1359 (S.D. Fla. 2011) ("Class Counsel took on a great deal of risk in bringing this case, and turned a potentially empty well into a significant judgement. That kind of initiative and skill must be adequately compensated to insure that counsel of this caliber is available to undertake these kinds of risky but important cases in the future."). Plaintiffs' Counsel have also "shown their

ability by achieving the excellent result obtained" here with a recovery of 48% of the upper end of estimated recoverable damages. *Shaw v. Interthinx, Inc.*, No. 13-cv-01229-REB-NYW, 2015 U.S. Dist. LEXIS 52783, at *21 (D. Colo. Apr. 21, 2015). Additionally, the litigation was vigorously contested by Defendants' experienced and qualified attorneys from Latham & Watkins LLP, providing further support for Lead Counsel's fee award. *See, e.g.*, *Crocs*, 2014 U.S. Dist. LEXIS 134396, at *10 (fact that "Defendants' counsel is equally skilled" favors approval of requested fee award); *In re Adelphia Commc'ns Corp. Sec. and Deriv. Litig.*, No. 03 MDL 1529 (LMM), 2006 U.S. Dist. LEXIS 84621, at *15 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work."), *aff'd* 272 F. App'x. 9 (2d Cir. 2008).

### 4. The Preclusion of Other Employment, Contingent Nature of the Fee, and Undesirability of the Action

Plaintiffs' Counsel devoted a considerable amount of time and effort to the Action despite the very significant risk of no recovery. *See, e.g.*, *O'Dowd v. Anthem, Inc.*, No. 14-cv-02787-KLM-NYW, 2019 U.S. Dist. LEXIS 153610, at *51 (D. Colo. Sept. 9, 2019) ("given that Class Counsel spent a significant number of hours on this matter on a contingent fee basis, it is reasonable to expect that this case precluded other work"); *Lucas v. Kmart Corp.*, No. 99-cv-01923-JLK-CBS, 2006 U.S. Dist. LEXIS 51420, at *18 (D. Colo. July 27, 2006) ("Large-scale class actions . . . necessarily require a great deal of work, and a concomitant inability to take on other cases."). The "risk of non-recovery" weighs heavily in considering an award of attorneys' fees. *Vaszlavik v. Storage Tech. Corp.*, No. 95-B-2525, 2000 U.S. Dist. LEXIS 21140, at *9-10 (D. Colo. Mar. 9, 2000); *see also Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1009 (D. Colo.

12

2014) ("Class Counsel took the case on a contingent basis, which permits a higher recovery to compensate for the risk of recovering nothing for their work."); *Qwest II*, 2006 U.S. Dist. LEXIS 71267, at *22 (contingency fee "is designed to reward counsel for taking the risk of prosecuting a case without payment during the litigation, and the risk that the litigation may be unsuccessful").

Plaintiffs' Counsel prosecuted this Action on an entirely contingent basis, bearing all risks of litigating the case through trial and appeals with no guarantee of any compensation. As further detailed immediately below, Plaintiffs' Counsel invested substantial time and expenses to the Action despite the comparably greater risk of success that class action lawsuits, and particularly securities actions, carry compared to other litigation. *Crocs*, 2014 U.S. Dist. LEXIS 134396, at *16 (risk of "no compensation for their extensive efforts was 'not merely hypothetical,' especially where, as here, Plaintiffs were subject to the PSLRA's heightened pleading standard"). Indeed, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005). Thus, federal securities class actions are "often seen as undesirable." *In re Spectranetics Corp. Sec. Litig.*, No. 08-cv-02048-REB-KLM, 2011 U.S. Dist. LEXIS 159436, at *11 (D. Colo. Apr. 4, 2011); *see also Kmart*, 2006 U.S. Dist. LEXIS 51420, at *20 (complex class actions are "not a desirable case to take" given the risk of no recovery and legal issues involved).

Despite the preclusion of other employment, high risk and undesirability of the Action, Plaintiffs' Counsel prosecuted the Action vigorously on a contingent basis which "weighs in favor of a greater fee because [s]uch a large investment of money [and time] place[s] incredible burdens upon law practices." *Crocs*, 2014 U.S. Dist. LEXIS 134396, at *14. "The significant burdens

13

inherent in a contingent fee arrangement in a case of this magnitude 'weighs heavily in support of a substantial fee award.'" *DaVita*, 2021 U.S. Dist. LEXIS 131699, at *10.

### 5.   The Time and Labor Expended by Plaintiffs' Counsel

Plaintiffs' Counsel devoted significant time and effort prosecuting this litigation and achieving the Settlement, supporting the requested fee. As discussed more fully in the Eagel Declaration (¶¶ 5, 18-25, 46, 64-66), Plaintiffs' Counsel's work included, among other things:

- conducting an extensive investigation and analysis of the allegations in preparing the Complaint which included, *inter alia*: a review of Defendants' filings with the SEC; wire and press releases published by, and regarding, Vivint Solar; analysts' reports and advisories about the Company; economic analyses of securities movements and pricing data; and hiring and working with a private investigator to locate and conduct interviews with former Vivint Solar employees; (¶ 18);

- drafting a detailed consolidated complaint (¶¶ 46, 64);

- researching and drafting Plaintiffs' responses in opposition to Defendants' arguments for transfer of venue and to Defendants' pre-motion to dismiss letter addressing complex issues on falsity, materiality, and scienter (¶¶ 19-20, 46);

- consulting with experts on damages in preparing for settlement negotiations (¶ 46);

- engaging in extensive, good faith, arm's-length negotiations leading to the Settlement, including: (i) finding an appropriate mediator; (ii) drafting Plaintiffs' detailed mediation statement; (iii) analyzing the Defendants' mediation statement and damages, including legal research into Defendants' positions therein; (iv) preparing for and participating in an all-day mediation; and, (v) participating in additional negotiations via telephone and email relating to the specific terms included in the Stipulation (¶¶ 25-27, 65);

- preparing Plaintiffs' motion for preliminary approval of the settlement and related documents (¶¶ 27, 66);

- working with Plaintiffs' damages experts to prepare the Plan of Allocation (¶ 66); and

- overseeing the notice process that was approved by the Court (*id.*).

Moreover, Plaintiffs' Counsel will continue to expend necessary time and resources in preparing for and appearing at the final Settlement Hearing and ensuring the finalization of the claims process.  ¶ 66.  No additional compensation will be sought for this work.  *See In re Facebook Inc., IPO Sec. and Deriv. Litig.*, MDL No. 12-2389, 2015 U.S. Dist. LEXIS 152668, at *27 (S.D.N.Y. Nov. 9, 2015) ("Considering that the work in this matter is not yet concluded for Plaintiffs' counsel who will necessarily need to oversee the claims process, respond to inquiries, and assist Class Members in submitting their Proof of Claims, the time and labor expended by counsel in this matter support a conclusion that a 33% fee award in this matter is reasonable.").

Plaintiffs' Counsel devoted more than 600 hours to the litigation of this Action for an aggregate lodestar value of $452,026.25.[8]  ¶¶ 68-69; Exs. D and F.  At all times, Plaintiffs' Counsel provided comprehensive and focused efforts to achieve the best possible results for the Settlement Class, with no certainty of reimbursement for their time.  ¶ 68.  Accordingly, the time and effort devoted to the efficient management of this litigation and obtainment of the $1.25 million Settlement confirms that the 33 and 1/3% fee request is reasonable.

---

[8]  The lodestar is calculated by multiplying the number of hours all attorneys and legal professionals devoted to the action by their current hourly rate.  The hourly rate to be applied in calculating a lodestar is that which is normally charged in the community where the attorney practices. *Blum v. Stenson*, 465 U.S. 886, 895 (1984).  Here, the hourly rates for Plaintiffs' Counsel range from $475 to $950, and for professional staff from $125 to $375.  ¶ 68; Exs. D and E.  Such rates are comparable to those charged by law firms litigating securities actions and other complex matters.  ¶ 68.  *See, e.g.*, *DaVita*, 2021 U.S. Dist. LEXIS 131699, at *8 (noting that attorney rates from $365 to $895 and support staff rates from $250 to $275 are "lower than hourly rates previously approved by [the court] and others within the District"); *In re Molycorp Inc. Sec. Litig.*, No. 1:12-cv-00292-RM-KMT, 2017 U.S. Dist. LEXIS 233754 (D. Colo. June 16, 2017) (approving rates ranging from $435 to $955); *In re GSE Bonds Antitrust Litig.*, No. 19-cv-1704 (JSR), 2020 U.S. Dist. LEXIS 104842, at *23 (S.D.N.Y. June 16, 2020) (rates ranging from $350 to $1,150).

Although not required by courts in the Tenth Circuit, a lodestar "cross-check" also supports the reasonableness of the one-third fee request. *Array*, 2021 U.S. Dist. LEXIS 249646, at *41; *White Family Minerals v. EOG Res. Inc.*, No. 19-cv-409-KEW, 2021 U.S. Dist. LEXIS 249310, at *8-9 (E.D. Okla. Nov. 12, 2021) (a lodestar analysis is not required) (collecting cases). Here, Plaintiffs' Counsel total lodestar is $452,026.25, and the requested one-third of the Settlement Fund, or $416,666.67 equates to a "negative" multiplier of 0.92 which is well below the typical range of multipliers routinely approved by courts in like actions. ¶ 69; *Campbell*, 2015 U.S. Dist. LEXIS 134235, at *20 n.5 (2.9 multiplier within reasonable range); *Interthinx*, 2015 U.S. Dist. LEXIS 52783, at *23 (finding 1.37 multiplier to be "significantly lower than lodestar multipliers . . . approved in other class action cases"); *Crocs*, 2014 U.S. Dist. LEXIS 134396, at *12-13 (finding 1.23 multiplier to be below what is typically awarded); *Mishkin v. Zynex, Inc.*, No. 09-cv-00780-REB-KLM, 2012 U.S. Dist. LEXIS 132405, at *8 (D. Colo. Sept. 14, 2012) (collecting cases from Tenth Circuit approving multipliers ranging from 2.5 to 4.6). Thus, the lodestar cross-check supports the requested fee award.

### D.    The Reaction of the Settlement Class to Date Supports the Fee Request

While not an enumerated *Johnson* factor, courts in the Tenth Circuit also recognize the significance of the class member's reaction to the request for attorneys' fees and expenses. *See, e.g.*, *Qwest II*, 2006 U.S. Dist. LEXIS 71267, at *32. The reaction of the Settlement Class to date here is overwhelmingly positive, supporting the requested fee award.

As of March 30, 2022, the Claims Administrator has mailed 20,920 copies of the Postcard Notice to potential Settlement Class members and nominees which directs Settlement Class members to the Settlement website where the Notice is accessible. *See* Ex. A, ¶ 7 (Declaration of

16

Jack Ewashko of A.B. Data, Ltd. Regarding Notice Administration (the "Ewashko Decl.")).  The Claims Administrator has also published the Summary Notice.  *Id.* at ¶ 8.  The Postcard Notice and long-form Notice each explain that Lead Counsel intend to request attorneys' fees of no more than 33 and 1/3% of the Settlement Fund and expenses of no more than $65,000, plus interest.  *See* Exs. A-1 and A-2.  Although Settlement Class members have until April 14, 2022, to submit objections, to date no objections to any aspect of the Settlement have been received.[9]  ¶¶ 7, 42, 74; Ewashko Decl., ¶ 12.  "[T]he fact that none of the class members objected to the requested attorneys' fees is significant and weighs in favor of the requested award."  *Crocs*, 2014 U.S. Dist. LEXIS 134396, at *17; *DaVita*, 2021 U.S. Dist. LEXIS 131699, at *11 (same); *Sillerman*, 2019 U.S. Dist. LEXIS 218116, at *67 ("The lack of objections, in this day and age, is not only remarkable, but militates in favor of approval of the Fees as requested.").

For all the foregoing reasons, Lead Counsel respectfully submits that the requested fee should be awarded by the Court.

### E.    Plaintiffs' Counsel's Litigation Expenses Are Reasonable, Were Necessarily Incurred, and Should Be Reimbursed

Pursuant to the Notice, Plaintiffs' Counsel also respectfully requests reimbursement of litigation expenses of $30,608.91.  The amount is reasonable and includes the necessary litigation costs and expenses properly recovered by counsel.  "As with attorneys' fees, an attorney who creates or preserves a common fund for the benefit of a class is entitled to receive reimbursement of all reasonable costs incurred."  *Vaszlavik*, 2000 U.S. Dist. LEXIS 21140, at *11 (D. Colo. March 9, 2000); *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM) (PED),

---

[9]  If any objections are received, Lead Counsel will address them in the reply papers.

2010 U.S. Dist. LEXIS 119702, at *86 (S.D.N.Y. Nov. 5, 2010) ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class.").

The expenses incurred here have been itemized and their accuracy attested to by Plaintiffs' Counsel.  Exs. D and E.  These expenses include, for example, court costs, investigator fees, mediation fees, and expert fees (*id.*), all of which are reasonable and the type normally billed by attorneys to paying clients.  *See, e.g.*, *Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*, 8 F.3d 722, 725-26 (10th Cir. 1993); *Array*, 2021 U.S. Dist. LEXIS 249646, at *43 ("Courts regularly award litigation costs and expenses, including . . . court costs, research on online databases, experts and consultants, and reasonable travel expenses" in securities actions as such expenses are "routinely bill[ed] [to] private clients").  As noted herein, not a single objection by Settlement Class members to the reimbursement of expenses has been received to date and the requested reimbursement amount, when combined with Plaintiffs' request for an incentive award, is more than $30,000.00 *lower than* the maximum $65,000 listed in the Notice, further supporting approval.  ¶ 75.

### F.      The Proposed Plaintiff Awards Are Reasonable and Should Be Granted

Plaintiffs seek approval for awards of $1,750.00 each, an aggregate total of $3,500.00, to compensate them and as incentive awards in recognition of their time and effort expended on behalf of the Settlement Class.  ¶¶ 79-81; *see also* Exs. B and C (Declarations of Plaintiffs).  The PSLRA expressly permits Plaintiffs to seek an "award of reasonable costs and expense (including lost wages) directly relating to the representation of the class[]."   15 U.S.C. § 78u-4(a)(4). Furthermore, "[c]ourts regularly give incentive awards to compensate named plaintiffs for the work they performed – their time and effort invested in the case."  *Rothe v. Battelle Mem'l Inst.*,

No. 1:18-cv-03179-RBJ, 2021 U.S. Dist. LEXIS 117836, at *36-37 (D. Colo. June 24, 2021)  In considering plaintiff awards, courts consider:  "(1) the actions the class representative took to protect the interests of the class; (2) the degree to which the class has benefited from those actions; and (3) the amount of time and effort the class representative expended in pursuing the litigation." *DaVita*, 2021 U.S. Dist. LEXIS 71038, at *19.

As detailed in the Plaintiffs' declarations, each actively participated in the litigation by, *inter alia*:  (i) regularly communicating with Lead Counsel concerning the Action; (ii) remaining fully informed about developments in the case; (iii) reviewing pleadings and materials filed with the Court; (iv) discussing the progress and ultimate settlement of the Action with Lead Counsel; and (v) approving the Settlement.  ¶ 80; Exs. B and C.

The incentive awards requested by Plaintiffs are comparable, if not lower than, those granted in similar cases and in the Tenth Circuit.  *See, e.g.*, *Revolution Lighting*, 2020 U.S. Dist. LEXIS 145147, at *8 (awarding $10,000 to lead plaintiff where motion to dismiss never filed); *Vaccaro*, 2017 U.S. Dist. LEXIS 205785, at *23 (awarding three plaintiffs $5,000 each when motion to dismiss operative complaint pending because plaintiffs "assisted in the litigation communicating with counsel, reviewing pleadings, and monitoring settlement negotiations"); *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 354 (S.D.N.Y. 2014) (awarding six plaintiffs $5,000 each while motion to dismiss pending); *DaVita*, 2021 U.S. Dist. LEXIS 71038, at *19-20 (approving $10,000 reimbursement award for each lead plaintiff); *Campbell*, 2015 U.S. Dist. LEXIS 134235, at *22-23 (awarding seven plaintiffs $7,500 each).

For the foregoing reasons, it is respectfully submitted that awards of $1,750.00 each for the Plaintiffs are reasonable and appropriate.

19

### III.   CONCLUSION

For the foregoing reasons, Lead Counsel respectfully requests that the Court award (i) attorneys' fees in the amount of 33 and 1/3% of the Settlement Fund, which is $416,666.67; (ii) payment of litigation expenses totaling $30,608.91, plus interest accrued at the same rate as the Settlement Fund; and (iii) incentive payments of $1,750.00 to each Plaintiff.  A proposed order will be submitted with Lead Counsel's reply papers, after the deadline for objections has passed.

DATED: March 31, 2022                                    Respectfully submitted,

**JAMES DODGE RUSSELL & STEPHENS P.C.**

/s/ *Mitchell A. Stephens*
Mitchell A. Stephens
Mark F. James
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Tel.: (801) 363-6363
mstephens@jdrslaw.com
mjames@jdrslaw.com

**BRAGAR EAGEL & SQUIRE, P.C.**
Lawrence P. Eagel (admitted *pro hac vice*)
Marion C. Passmore (admitted *pro hac vice*)
810 Seventh Avenue, Suite 620
New York, NY 10019
Tel: (212) 308-5858
Fax: (212) 214-0506
eagel@bespc.com
passmore@bespc.com

*Counsel for Lead Plaintiffs Billy Wallace and Kyu S. Jang and the Class*

20

## CERTIFICATE OF SERVICE

I certify that on this 31st day of March, 2022, I electronically filed Lead Counsel's Motion for Award of Attorneys' Fees and Reimbursement of Litigation Expenses, and Supporting Memorandum using the Court's CM/ECF system, which will be sent electronically to all counsel of record.

/s/ *Mitchell A. Stephens*
Mitchell A. Stephens