Mark F. James (5295)
Mitchell A. Stephens (11775)
JAMES DODGE RUSSELL & STEPHENS, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
 mjames@jdrslaw.com
 mstephens@jdrslaw.com

*Counsel for Lead Plaintiffs and the Class*

[Additional counsel listed on signature page]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| IN RE VIVINT SOLAR, INC. SECURITIES LITIGATION | Case No. 2:20-cv-00919-JNP-CMR<br><br>District Judge: Jill N. Parrish<br>Magistrate Judge Cecilia M. Romero |

**DECLARATION OF LAWRENCE P. EAGEL IN SUPPORT
OF (1) LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT, PLAN OF ALLOCATION, AND CERTIFICATION OF
SETTLMENT CLASS; AND (2) LEAD COUNSEL'S MOTION FOR AN AWARD
<u>OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES</u>**

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................ 1

II. FACTUAL AND PROCEDURAL BACKGROUND.......................................................... 5

    A. Summary of the Claims and Allegations ................................................................ 5

    B. Procedural History ................................................................................................ 6

    C. Mediation and Settlement Negotiations.................................................................. 8

III. SUMMARY OF THE SETTLEMENT AND NOTICE PROGRAM ................................... 9

    A. Summary of the Settlement Terms ........................................................................ 9

    B. The Court Has Preliminarily Approved the Settlement......................................... 10

    C. Dissemination of Notice to the Class Was Adequate and Accomplished in Accordance with the Preliminary Approval Order ................................................ 10

IV. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ........................... 12

V. THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE.......... 15

VI. THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED............................ 16

VII. LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND EXPENSES IS REASONABLE AND SHOULD BE APPROVED ........................................................ 16

    A. The Fee Application............................................................................................. 16

    B. Plaintiffs' Counsel's Work and Expertise.............................................................. 17

    C. Standing and Caliber of Opposing Counsel.......................................................... 19

    D. The Risks of Contingent Litigation...................................................................... 20

    E. The Reaction of the Settlement Class to the Requested Fee................................. 20

    F. Payment of the Requested Expenses and Costs is Fair and Reasonable............... 21

VIII. PLAINTIFFS' REQUEST FOR AWARDS IS REASONABLE AND SHOULD BE APPROVED ........................................................................................................... 22

IX. CONCLUSION.......................................................................................................... 23

## TABLE OF EXHIBITS TO DECLARATION

| EX. # | TITLE |
|---|---|
| A | Declaration of Jack Ewashko of A.B. Data, Ltd. Regarding Notice Administration |
| A-1 | Postcard Notice |
| A-2 | Notice |
| A-3 | Proof of Publication of Summary Notice – *Investor's Business Daily* |
| A-4 | Proof of Publication of Summary Notice – *PR Newswire* |
| A-5 | Exclusion Request |
| B | Declaration of Kyu S. Jang in Support of (1) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement, Plan of Allocation, and Certification of Settlement Class, and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses |
| C | Declaration of Billy Wallace in Support of (1) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement, Plan of Allocation, and Certification of Settlement Class, and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses |
| D | Declaration of Lawrence P. Eagel on Behalf of Bragar Eagel & Squire, P.C. in Support of Application for an Award of Attorneys' Fees and Expenses |
| D-1 | Bragar Eagel & Squire, P.C. Lodestar Schedule |
| D-2 | Bragar Eagel & Squire, P.C. Expenses Schedule |
| E | Declaration of Mitchell A. Stephens on Behalf of James Dodge Russell & Stephens, P.C. in Support of Application for an Award of Attorneys' Fees and Expenses |
| E-1 | James Dodge Russell & Stephens, P.C. Lodestar Schedule |
| E-2 | James Dodge Russell & Stephens, P.C. Expenses Schedule |
| F | Summary Table of Plaintiffs' Counsel Lodestars and Litigation Expenses |
| G | Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review*, NERA (Jan. 25, 2022) |

I, Lawrence P. Eagel, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

## I.   INTRODUCTION

1.     I am a partner and shareholder of the law firm of Bragar Eagel & Squire, P.C. ("Bragar Eagel"), Court-appointed Lead Counsel and counsel of record for Lead Plaintiffs Billy Wallace and Kyu S. Jang (together, "Plaintiffs"), in the above-captioned securities class action (the "Action").[1]  I have personally participated in, overseen, and monitored the prosecution of this Action, and have otherwise been kept informed of developments in this litigation by attorneys working with me and under my supervision.  Thus, if called upon, I can testify to the matters set forth herein.

2.     I respectfully submit this Declaration in support of (1) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement, Plan of Allocation, and Certification of Settlement Class, and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, both filed concurrently herewith.  The terms of the Settlement are set forth in the Stipulation.   The Court preliminarily approved the Settlement by its Order Granting Preliminary Approval of Class Action Settlement, dated November 30, 2021 (the "Preliminary Approval Order").  ECF No. 88.

3.     This Declaration sets forth the nature of the claims asserted, the Action's procedural history, and the methods by which the Settlement Class was notified of the Settlement.  It also demonstrates the reasons why the Settlement and Plan of Allocation are fair, reasonable, and

---

[1]  All capitalized terms that are not defined herein have the same meanings as set forth in the Stipulation and Agreement of Settlement dated November 4, 2021 (ECF No. 87-2) (the "Stipulation" or "Stip.").

1

adequate, and why Lead Counsel's application for attorneys' fees, reimbursement of litigation expenses, and service awards for the Plaintiffs should be approved.

4.      The settlement contemplated by the Stipulation (the "Settlement") provides for a payment of $1,250,000.00 in cash (the "Settlement Amount") in exchange for the release of all claims asserted by Plaintiffs against defendants Vivint Solar, Inc. ("Vivint Solar" or the "Company"), David Bywater, and Dana Russell (collectively, "Defendants") and completely resolves the Action.  While Plaintiffs and Lead Counsel believe that the allegations in the Consolidated Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint" or "Compl.") (ECF No. 26) have merit, Lead Counsel respectfully submits that the Settlement represents an excellent result for the Settlement Class in light of the significant risks in the Action.  The Settlement provides a considerable benefit to the Settlement Class by conferring an immediate recovery while avoiding the risks, delay and expenses of continued litigation, including the risk that the Settlement Class could recover less than the Settlement Amount or nothing at all.

5.      The proposed Settlement is the result of significant efforts by Lead Counsel, which included, among other things detailed herein:  (i) extensive investigation of the claims, including a detailed review of Vivint Solar's public filings with the U.S. Securities and Exchange Commission ("SEC"), press releases, and conference call transcripts, and other reports and news articles concerning Vivint Solar; (ii) third-party interviews; (iii) drafting the detailed Complaint; (iv) analyzing and addressing Defendants' anticipated motion to dismiss arguments in pre-motion to dismiss letter briefing; (v) consulting with damages experts; (vi) drafting and exchanging a detailed mediation statement setting forth the facts and strengths of Action and potential damages;

and, (vii) engaging in a full-day mediation session with a well-respected mediator, Greg Danilow, Esq. of Phillips ADR ("Danilow" or the "Mediator").

6.      In view of the foregoing, the Settlement is the result of negotiations by counsel who possessed a full understanding of both the strengths and weaknesses of their respective cases and takes into consideration the significant risks specific to this Action.  When balanced against the significant risks Plaintiffs faced in bringing the Action to trial and the overall amount of potential damages involved, the Settlement of $1,250,000.00 represents an excellent result for the Settlement Class.  Substantial investigation, legal research and litigation to date informed Lead Counsel that, while they believe this case is meritorious, there are also weaknesses that had to be carefully evaluated in determining what course of action was in the best interests of the Settlement Class (*i.e.*, whether to settle and on what terms, or to continue to litigate through summary judgment and a trial on the merits).

7.      Additional evidence that the Settlement represents an excellent result for the Settlement Class is the fact that, as of the filing of this Declaration, Plaintiffs have only received one request for exclusion, and no objections to the Settlement.

8.      Likewise, the Plan of Allocation, developed in consultation with Plaintiffs' damages experts, should be approved as fair, reasonable, and adequate as it equitably distributes the proceeds of the Settlement among Settlement Class members.  The Plan of Allocation is similar to allocation plans approved and successfully used in other securities class actions; gives no preferential treatment to any Settlement Class member, Settlement Class segment, or Plaintiffs; and ensures that each Authorized Claimant will receive his, her, or its *pro rata* share

of the Net Settlement Fund.  As of the date of this Declaration, no Settlement Class members have objected to the Plan of Allocation.

9.      Finally, the requested attorneys' fees in the amount of $416,666.67, or 33 and 1/3%, of the Settlement Fund and reimbursement of Plaintiffs' Counsel's[2] litigation expenses in the amount of $30,608.91 as well as awards of $1,750.00 each to Plaintiffs for their representation of the Settlement Class, are reasonable and appropriate.  Lead Counsel's fee request is within the range of fee percentages frequently awarded in the Tenth Circuit and in comparable securities class actions and, is justified in light of the substantial benefits that Plaintiffs' Counsel conferred on the Settlement Class, the risks they undertook, the quality of their representation, the nature and extent of their legal services, and the fact that they pursued the case, even though this considerable all-cash Settlement was far from guaranteed at its outset. Plaintiffs' Counsel expended considerable time and effort prosecuting the Action on a fully contingent basis and have advanced litigation and investigative expenses in the expectation that, as is customary, they will be paid a percentage of the common fund created by their efforts as attorneys' fees and receive payment for their expenses.  The requested fee results in a "negative" multiplier of 0.92, further supporting the reasonableness of the fee request.  As of the date of this Declaration, there have been no objections to Lead Counsel's request for attorneys' fees and reimbursement of litigation expenses.

10.      Plaintiffs and Lead Counsel submit that the Settlement and Plan of Allocation are fair, reasonable, and adequate and should be approved.  In addition, Lead Counsel respectfully

---

[2] "Plaintiffs' Counsel" includes Bragar Eagel and local counsel James Dodge Russell & Stephens P.C. ("James Dodge").

submits that the requests for attorneys' fees, reimbursement of litigation expenses, and Plaintiffs' awards are fair and reasonable and should be approved.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Summary of the Claims and Allegations

11.   This is a federal securities class action for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5) against Defendants.  Plaintiffs' claims are set forth in the Complaint, which asserts claims against Defendants on behalf of Vivint Solar investors during the Class Period.

12.   The Complaint alleges that between March 5, 2019 and September 26, 2019, inclusive (the "Class Period"), Defendants issued materially false and misleading statements and failed to disclose material facts regarding the Company's legal battles and alleged financial harm stemming from alleged fraudulent sales.  Compl., ¶¶ 21-116.

13.   Plaintiffs further assert in the Complaint that as a result of the allegedly fraudulent sales tactics and resulting investigations and lawsuits, the Company's financial results were overstated.  *Id.* at ¶¶ 91-116.  Indeed, on January 6, 2020, Vivint Solar entered into a settlement with the Office of the Attorney General for the State of New York, agreeing to pay almost $2 million in penalties, costs, and restitution, in addition to implementing costly remedial and protective measures.  *Id.* at ¶ 88.

14.   The Complaint alleges that investors learned about the Company's sales culture on September 27, 2019, when *Marcus Aurelius Value* published a report (the "Marcus Aurelius Report") detailing a bevy of consumer claims against Vivint Solar, including "28 undisclosed lawsuits" that alleged various deceptive practices by Vivint Solar sales personnel, including, *inter*

*alia*, forging signatures, impersonating local utility companies, conducting unauthorized credit checks, and exploiting vulnerable populations. *Id.* at ¶¶ 6, 8, 117-20.  When the Marcus Aurelius Report came out, Vivint Solar's share price dropped by over 2% in same-day trading and by a total of 4.6% including the next two trading days, damaging investors. *Id.* at ¶¶ 7, 121.

15.     Defendants continue to deny that they committed any acts or omissions giving rise to any liability and/or violation of the law.

### B.     Procedural History

16.     This litigation commenced on October 11, 2019, when Jason Crumrine filed the original securities class action complaint in the United States District Court for the Eastern District of New York, No. 1:19-cv-05777.  ECF No. 1.  On October 31, 2019, a similar action captioned *Li v. Vivint Solar, Inc., et al.*, No. 2:19-cv-06165-PKC-JO (the "*Li* Action") was also filed in the United States District Court for the Eastern District of New York.

17.     On or about March 27, 2020, United States Magistrate Judge James Orenstein consolidated this Action and the *Li* Action under the caption *In re Vivint Solar, Inc. Securities Litigation*, and appointed Billy Wallace and Kyu S. Jang to serve as Lead Plaintiffs and Bragar Eagel to serve as Lead Counsel.  ECF Nos. 23-24.

18.     Plaintiffs filed the Complaint on June 29, 2020.  ECF No. 26.  The Complaint was based on an investigation and analysis by Lead Counsel which included, among other things, review and analysis of: (i) press releases, news articles, transcripts, and other public statements issued by or concerning Vivint Solar; (ii) research reports issued by financial analysts concerning Vivint Solar's business; (iii) Vivint Solar's filings with the SEC; (iv) docket entries from civil actions involving Defendants and alleging fraudulent sales practices filed in courts around the

country; (v) documents concerning investigations by state attorneys general involving Defendants; (vi) economic analyses of securities movement and pricing data; and, (vii) other publicly available information and data concerning Vivint Solar, its securities, and the markets therefor. As part of Lead Counsel's investigation, investigators for Lead Counsel also conducted interviews with former Vivint Solar employees.

19. On July 29, 2020, Defendants filed a letter with the court requesting a pre-motion conference regarding their anticipated motion to transfer venue and anticipated motion to dismiss the Complaint. ECF No. 29. Plaintiffs responded to Defendant's pre-motion letter on August 5, 2020. ECF No. 30.

20. Defendants' pre-motion letter argued that, *inter alia*: (i) the Action should be transferred from the United States District Court for the Eastern District of New York to the United States District Court for the District Utah for the convenience of the parties and interests of justice as Vivint Solar is headquartered in Utah and the majority of the evidence is located there; (ii) the Action should be dismissed due to failure to allege a false or misleading statement as (a) certain alleged misstatements were not contradicted by any particularized allegations of fact; (b) the Company's risk factors warned of the harms alleged to have occurred; (c) certain alleged misstatements were forward looking statements protected by the Private Securities Litigation Reform Act of 1995's ("PSLRA") safe harbor; and (d) certain alleged misstatements were corporate puffery; and (iii) the Action should be dismissed for failure to allege scienter.

21. The court held a telephonic pre-motion conference on October 27, 2020, and ordered the parties to file letters further addressing the transfer of venue issue. Plaintiffs and Defendants each submitted letters to the court on November 10, 2020. ECF Nos. 32-33. After a

telephonic conference on November 30, 2020, on December 30, 2020, the court ordered the Action be transferred to the United States District Court for the District of Utah.  ECF No. 37.

22.     On February 12, 2021, the Parties filed an Attorney Planning Meeting Report with the Court which included a proposed schedule on Defendants' motion to dismiss (ECF No. 63) which the Court so ordered on February 19, 2021 (ECF No. 70).

23.     On April 12, 2021, the Parties stipulated to an extension of time on the motion to dismiss briefing schedule in light of agreement to hold a mediation on May 19, 2021.  ECF No. 71.

**C.      Mediation and Settlement Negotiations**

24.     The Parties reached the proposed Settlement through a protracted, good faith, arm's-length negotiation facilitated by Danilow, an experienced mediator.

25.     On May 12, 2021, Plaintiffs and Defendants submitted to the Mediator and exchanged mediation statements detailing the strengths and weaknesses of their case and damages.

26.     On May 19, 2021, counsel for all Parties participated in a full-day mediation hosted via Zoom by Danilow.  The Parties reached an agreement in principle late in the day for the cash payment of $1.25 million in resolution of the claims.

27.     Subsequently, the Parties negotiated a Stipulation more fully documenting the Settlement, and prepared the class notice, postcard notice, summary notice, claim form, and proposed orders for preliminary approval and final approval and entering final judgment.  The Parties finalized and executed the Stipulation on November 4, 2021.  ECF No. 87-2.

28.     Plaintiffs filed a motion for preliminary approval of settlement and accompanying documents on November 10, 2021.  ECF No. 87.

III.    **SUMMARY OF THE SETTLEMENT AND NOTICE PROGRAM**

A.    **Summary of the Settlement Terms**

29.    The proposed Settlement Class, stipulated to by the Parties, includes all persons and entities who purchased or otherwise acquired Vivint Solar common stock between March 5, 2019 and September 26, 2019, inclusive, and were allegedly damaged thereby.  Stip., ¶ 1(rr). Excluded from the Class are:  (i) the Defendants, (ii) Sunrun, Inc., (iii) the executive officers and directors of Vivint Solar, (iv) any entity in which any Defendant has or had a controlling interest, (v) members of any Defendant's Immediate Family, and (vi) the legal representatives, heirs, successors, or assigns of any such excluded party.  *Id.*  Also excluded from the Class are any persons or entities who exclude themselves in accordance with the requirements set forth in the Notice.  *Id.*

30.    Under the terms of the Settlement, the Defendants were required to pay, or cause to be paid, $1,250,000.00 into an Escrow Account within sixty calendar days of preliminary settlement approval (the "Settlement Fund").  *Id.* at ¶¶ 1(qq), 11.  In return, the Settlement provides that Plaintiffs and the Settlement Class will release all Released Plaintiff Claims against the Defendant Releasees.  *See, e.g.*, *id.* at ¶¶ 1(l), 1(ff), 1(mm), 4-8.

31.    The Settlement Fund, including any interest earned thereon, shall be used to pay Taxes and Tax Expenses, Notice and Administration Costs, any attorneys' fees and litigation expenses awarded by the Court, and any awards to Plaintiffs authorized by the Court, with the balance (the "Net Settlement Fund") to be distributed to Authorized Claimants in accordance with the Plan of Allocation, developed in consultation with Plaintiffs' experienced damages experts, to be approved by the Court.  *Id.* at ¶ 12; Stip. Ex. 2 (Notice).

**B.      The Court Has Preliminarily Approved the Settlement**

32.      On November 30, 2021, the Court issued the Preliminary Approval Order, thereby preliminarily approving the proposed Settlement, finding certification of the Settlement Class likely, and directing dissemination of notice to Settlement Class members.  ECF No. 88.

33.      The Court scheduled the Settlement Hearing for final approval of the Settlement, the Plan of Allocation, attorneys' fees and expenses, including awards to Plaintiffs, final certification of the Settlement Class, and to hear any objections by Settlement Class members, for May 5, 2022 at 2:00 p.m. MST.  Defendants have paid $1.25 million into the Escrow Account for the benefit of the Settlement Class.

**C.      Dissemination of Notice to the Class Was Adequate
and Accomplished in Accordance with the Preliminary Approval Order**

34.      Attached hereto as Exhibit A is a true and correct copy of the Declaration of Jack Ewashko of A.B. Data, Ltd. Regarding Notice Administration (the "Ewashko Decl.") which sets forth the efforts undertaken by A.B. Data, Ltd. ("A.B. Data"), the Court-appointed Claims Administrator, to mail the Postcard Notice to potential Settlement Class members, to publish the Summary Notice, and to establish the Settlement website.

35.      Pursuant to the Preliminary Approval Order, as of March 30, 2022, A.B. Data has mailed 20,920 copies of the Postcard Notice to potential Settlement Class members and their brokers and nominees.  Ewashko Decl., ¶ 7.

36.      As in most class actions of this nature, the large majority of potential Settlement Class members are beneficial purchasers whose securities are held in "street name" – *i.e.*, the securities are purchased by brokerage firms, banks, institutions, and other third-party nominees in the names of the respective nominees, on behalf of the beneficial purchasers.  *Id.* at ¶ 4.  A.B. Data

maintains a proprietary database with names and addresses of the largest and most common banks, brokers, and other nominees (the "Record Holder Mailing Database"). *Id.*

37.    Potential Settlement Class members and/or their nominees were identified from A.B. Data's Record Holder Mailing Database and listings provided to A.B. Data by Vivint Solar's transfer agent, as well as brokerage firms and other banks, financial institutions, and other nominees holding Vivint Solar stock in street name for Settlement Class members. *Id.* at ¶¶ 3-4,6.

38.    The Postcard Notice directed potential Settlement Class members to the Settlement website, www.VivintSolarClassAction.com, where downloadable versions of the long form Notice and Claim Form are available. *Id.* at ¶ 5. The website became operative on December 20, 2021, and is accessible 24 hours a day, 7 days a week. *Id.* at ¶ 10. A.B. Data will update the website as necessary through the administration of the Settlement. *Id.*

39.    The Notice provided, *inter alia*: (i) a description of the nature of the Action and claims asserted; (ii) the definition of the Settlement Class; (iii) the amount of the Settlement; (iv) the reasons for and material terms of the Settlement; (v) the Plan of Allocation; (vi) the maximum amount of attorneys' fees and expenses that will be sought; (vii) the time and manner for requesting an exclusion from the Settlement Class or objecting to the Settlement, Plan of Allocation, or the requested attorneys' fees, expenses, or plaintiff incentive awards; (viii) the date, time, and place of the Settlement Hearing; (ix) the identity and contact information of the representatives of Lead Counsel and procedures for making inquiries; and (x) the binding effect of a judgment on Settlement Class members. *See* Ex. A-2 (Notice)

11

40.    A.B. Data also arranged for the Summary Notice to be transmitted over *PR Newswire* on December 20, 2021, and in print in the *Investor's Business Daily* on December 20, 2021.  Ewashko Decl., ¶ 8.

41.    In addition, beginning on December 20, 2021, A.B. Data established and continues to maintain a toll-free telephone number with a live operator during regular business hours dedicated to fielding calls and questions from Vivint Solar shareholders.  *Id.* at ¶ 9.

42.    The deadline to submit a request for exclusion or an objection is April 14, 2022. *See* Ex. A-2.  To date Plaintiffs have received one request for exclusion (Ewashko Decl., ¶ 11; Ex. A-5), and no objections to the Settlement, Plan of Allocation or Lead Counsel's request for attorneys' fees and expenses, or the proposed awards to Plaintiffs.

43.    A.B. Data will submit a supplemental declaration addressing any exclusions or objections, if any are received, once the April 14, 2022 deadline has passed.  Similarly, Plaintiffs will address any exclusions or objections in the reply which is to be filed with the Court on or before April 28, 2022.

## IV.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

44.    In light of the considerations discussed in Plaintiffs' Motion for Final Approval of Class Action Settlement, Plan of Allocation, and Certification of Settlement Class, and Supporting Memorandum, Plaintiffs and Lead Counsel submit that the Settlement is fair, reasonable, and adequate, satisfies the standards of Federal Rule of Civil Procedure 23 and the Tenth Circuit, and provides a significant recovery for the Settlement Class.

45.    The Settlement was only achieved after arm's-length negotiations between well-informed and experienced counsel on both sides, as Defendants are represented by a prominent,

experienced law firm, and overseen by Danilow, a well-respected and experienced mediator. There is no indicia of collusion, with neither Plaintiffs nor any other Settlement Class member receiving preferential treatment under the Settlement. All Settlement Class members, including Plaintiffs, will receive *pro rata* recoveries based on the same recognized loss calculation formula.

46. Prior to Settlement, Plaintiffs and Lead Counsel had a well-developed understanding of the strengths and weaknesses of the case, enabling them to appropriately evaluate the Settlement's fairness, reasonableness, and adequacy. More specifically, prior to Settlement, Lead Counsel had, among other things: (i) analyzed, *inter alia*, Vivint Solar's public filings with the SEC, press releases, conference call transcripts, and other reports and news articles concerning Vivint Solar; (ii) consulted with damages experts; (iii) drafted the detailed Complaint; (iv) researched and drafted Plaintiffs' responses in opposition to Defendants' arguments for transfer of venue and to Defendants' pre-motion to dismiss letter addressing complex issues on falsity, materiality, and scienter; and (v) drafted and exchanged a detailed mediation statement setting forth the facts and strengths of Action and potential damages. *See also supra* at ¶¶ 5, 18.

47. The immediate benefits of the proposed Settlement outweigh the substantial risks, delay, and expense of continued litigation. Although, based on the investigation and record, Plaintiffs and Lead Counsel believe their claims have merit, there are also uncertainties and risks in continuing the litigation. If litigation proceeded, Plaintiffs would first have to prevail on Defendants' anticipated motion to dismiss. To succeed on the motion to dismiss, the Complaint must satisfy the strict pleading standards of the PSLRA, including the requirement that the Complaint's factual allegations give rise to an inference of scienter.

13

48.     While Plaintiffs believe their claims would be borne out by the evidence, Defendants articulated defenses to Plaintiffs' allegations that the Court may have accepted in ruling on the anticipated motion to dismiss.

49.     After overcoming a motion to dismiss, years of extensive fact and expert discovery and depositions would likely ensue, in addition to contested motions for class certification and summary judgment, and a trial, with substantial expenditures of time and money.  Defendants would be expected to mount a vigorous defense at trial and further litigation would be expensive, complex, and protracted.

50.     Plaintiffs would have to establish falsity, materiality, scienter, and loss causation. Plaintiffs would also bear the burden of proving damages.  It is well established that loss causation and damages are complicated issues, often requiring testimony from financial experts and often reduced to a "battle of the experts."   A jury's reaction to conflicting expert testimony is unpredictable, and Lead Counsel recognized the possibility that the jury could have been swayed by Defendants' experts and awarded little to no damages.

51.     While Plaintiffs and Lead Counsel believe Plaintiffs would prevail on a class certification motion, Defendants would likely dispute any class-wide reliance presumptions. Defendants would also likely challenge class certification through a Rule 23(f) application and move to decertify all or part of the Class.

52.     Further, if Plaintiffs prevailed at the motion to dismiss stage, on a motion for class certification, on an expected motion for summary judgment, and at trial, Defendants would likely appeal one or more of the decisions.  The appeals process can go on for months or even years,

14

significantly prolonging the Action and may have ultimately led to a smaller recovery, or no recovery at all.

53.    In contrast to the foregoing, the Settlement provides an immediate and certain benefit to the Settlement Class in the form a cash payment of $1.25 million.  Lead Counsel, having evaluated the substantial risk, time, and expense required to prosecute this Action through trial and appeals, strongly believes that the Settlement is an excellent result for the Settlement Class.

54.    In consultation with their damages experts, Plaintiffs estimated that if they prevailed on all of the claims using a two-trader model and a multi-day approach to damages, overcoming all obstacles and risks discussed herein and in the accompanying motion, the maximum estimated recovery would be $2.6 million.  The Settlement Amount of $1.25 million, therefore, represents approximately 48% of the maximum potential recoverable damages.

## V.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE

55.    As stated in the Postcard Notice and the long form Notice available on the Settlement website, Settlement Class members who wish to participate in the Settlement must submit a Claim Form by June 4, 2022.  Exs. A-1 and A-2.  The Notice explains that the Net Settlement Fund, including any interest earned thereon, after deduction of certain enumerated fees and expenses, shall be paid to Authorized Claimants on a *pro rata* basis according to the Court-approved Plan of Allocation.  *E.g.*, Ex. A-2 at pp. 11-15.

56.    Plaintiffs and Lead Counsel believe that the proposed Plan of Allocation will result in a fair and equitable distribution of the Settlement proceeds among Settlement Class members who suffered losses as a result of the conduct alleged in the Action similar to any result if Plaintiffs were successful at trial.  Lead Counsel developed the Plan of Allocation in consultation with an

15

independent expert with the goal of distributing net settlement funds to eligible Settlement Class members in a fair and reasonable manner relative to their *pro rata* losses.

57.     Specifically, the Plan of Allocation calculates a "Recognized Loss" amount for each Settlement Class member which depends on several factors, including when a Settlement Class member purchased or otherwise acquired shares of Vivint Solar, when the shares were sold, the purchase and sale prices, and the per share amount of artificial inflation in the price of the Company's stock. *Id.*

## VI.    THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED

58.     The Court's Preliminary Approval Order stated that the "court will likely certify the class" under Fed. R. Civ. P. 23(a) and (b)(3) for the purposes of Settlement. *See* ECF No. 88 at 1.  There have been no changes to alter the propriety of class certification for settlement purposes.

## VII.   LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND EXPENSES IS REASONABLE AND SHOULD BE APPROVED

### A.    The Fee Application

59.     As compensation for their efforts, Lead Counsel requests an award of attorneys' fees in the amount of 33 and 1/3% of the Settlement Fund, or $416,666.67, and reimbursement of $30,608.91 in expenses reasonably incurred in the prosecution and settlement of the Action. *See* Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, and Supporting Memorandum (the "Fee Motion") filed herewith.  Lead Counsel have vigorously prosecuted this case on a fully contingent basis for over two years without any compensation whatsoever, and incurring substantial expenses without any guarantee of success.

16

60.     The Notice provides that Lead Counsel would apply for a fee award in an amount up to one-third (33 1/3%) of the Settlement Fund and that Lead Counsel would request reimbursement of litigation expenses in an amount not to exceed $65,000, which may include an application for an incentive payment to Plaintiffs directly related to their representation of the Settlement Class.

61.     As discussed in the Fee Motion, use of the percentage-of-fund method in determining the appropriate fee recovery is the preferred method in the Tenth Circuit as it directly aligns the interests of the class and counsel and incentivizes attorneys to take undesirable cases.  It is also supported by the Supreme Court and the PSLRA.

62.     The requested fee is well within the range of fees awarded by courts in the Tenth Circuit and in comparable securities class actions.

63.     Based on the time and labor expended by Plaintiffs' Counsel, the amount involved and results achieved, the risks and complexities of the litigation, the quality of representation, the contingent nature of the representation, preclusion of other employment, and undesirability of the Action, Lead Counsel respectfully submits the requested fee award is fair and reasonable and should be approved by the Court.

**B.      Plaintiffs' Counsel's Work and Expertise**

64.     Plaintiffs' Counsel devoted significant time and effort prosecuting this Action and achieving the Settlement, supporting the requested fee.  Prior to reaching the agreement in principle to settle the Action, Lead Counsel conducted an extensive investigation and analysis of the allegations in preparing the Complaint.  This investigation and analysis included reviewing: (i) press releases, news articles, transcripts, and other public statements issued by or concerning

17

Vivint Solar; (ii) research reports issued by financial analysts concerning Vivint Solar's business; (iii) Vivint Solar's filings with the SEC; (iv) docket entries from civil actions involving Defendants and alleging fraudulent sales practices filed in courts around the country; (v) documents concerning investigations by state attorneys general involving Defendants, (vi) economic analyses of securities movement and pricing data; and, (vii) other publicly available information and data concerning Vivint Solar, its securities, and the markets therefor. Furthermore, as part of Lead Counsel's investigation, investigators for Lead Counsel also conducted interviews with former Vivint Solar employees.

65.     Lead Counsel also performed extensive legal research and analysis in determining appropriate avenues for recovery and in opposing Defendants' pre-motion to dismiss letter, addressing complex issues on falsity, materiality, and scienter. Lead Counsel expended considerable time engaging in the extensive, good faith, arm's-length negotiations leading to the Settlement, including:  (i) finding an appropriate mediator; (ii) drafting Plaintiffs' mediation statement; (iii) analyzing the Defendants' mediation statement; (iv) preparing for and participating in an all-day mediation; (v) consulting with damages experts as to the value of the Settlement Class's damages; and (vi) participating in additional negotiations via telephone and email in regards to the terms of the Settlement.

66.     Plaintiffs' Counsel also consulted with experts regarding the Plan of Allocation and prepared the documents required for preliminary and final approval of the Settlement. Plaintiffs' Counsel has expended time in overseeing the Notice process and will continue to expend necessary time and resources in preparing for and appearing at the final Settlement Hearing and ensuring the finalization of the claims process.

67.     The expertise and experience of Plaintiffs' Counsel is an important factor to be weighed in assessing a fair fee.  Plaintiffs' Counsel have extensive experience prosecuting securities class actions and other complex litigation.  ECF Nos. 87-3 and 87-4 (firm résumés).

68.     At all times, Plaintiffs' Counsel provided comprehensive and focused efforts to achieve the best possible results for the Settlement Class, with no certainty of reimbursement for their time.  As set forth herein and by the lodestar reports of Plaintiffs' Counsel (Exs. D-1 and E-1) and summarized below, Plaintiffs' Counsel expended 623.50 hours for a total lodestar of $452,026.25.   The hourly rates for Plaintiffs' Counsel range from $475 to $950, and for professional staff from $125 to $375.  *See* Exs. D and E.  These rates are comparable to those normally charged by securities action law firms and normally charged in the community where the attorneys practice.  *Id.*

| LAW FIRM | HOURS | LODESTAR |
|---|---|---|
| Bragar Eagel | 604.75 | $442,531.25 |
| James Dodge | 18.75 | $9,495.00 |
| **TOTAL** | **623.50** | **$452,026.25** |

69.     Plaintiffs' Counsel total lodestar is $452,026.25, and the requested one-third of the Settlement Fund, or $416,666.67 equates to a negative multiplier of 0.92 which is well below the typical range of multipliers routinely approved by courts in securities class actions and other complex litigation in this Circuit.  Moreover, the lodestar multiplier does not include additional time that will be expended in completing the claims process.

C.      **Standing and Caliber of Opposing Counsel**

70.     The quality of the work performed by Plaintiffs' Counsel in attaining the Settlement should also be evaluated in light of the quality of the opposition.  Defendants were represented by

19

experienced and qualified attorneys well-versed in securities litigation at Latham & Watkins LLP. In the face of this knowledgeable and formidable opposition, Lead Counsel was nevertheless able to develop a case that was sufficiently strong to persuade the Defendants to settle it on terms that are favorable to the Settlement Class.

### D.      The Risks of Contingent Litigation

71.      Lead Counsel undertook and prosecuted this Action on an entirely contingent basis with no guarantee of any compensation.  Plaintiffs' Counsel knew from the outset that they would expend a substantial amount of time prosecuting this Action yet receive no compensation if the Action ultimately proved unsuccessful.  Thus, the contingent nature of payment of fees and expenses and the risks and complexity of the Action should be given substantial weight by the Court in considering the instant application for fees and expenses.

72.      As described above, this Action involved serious legal and practical hurdles that could have resulted in no recovery at all.  Continued litigation would have entailed significant risks to the Settlement Class, as the Action could be derailed in any number of ways before a final judgment in Plaintiffs' favor was entered (and withstood possible appeal).

73.      As a result of consistent and persistent efforts in the face of substantial risks and uncertainties, Plaintiffs' Counsel achieved a significant recovery for the benefit of the Settlement Class.

### E.      The Reaction of the Settlement Class to the Requested Fee

74.      As discussed above, the Postcard Notice has been mailed to 20,920 potential Settlement Class members and their nominees, and the Notice contains information regarding the

20

33 1/3% fee award requested by Lead Counsel.  As of the date of this Declaration, there have been no objections to the proposed fee request.

**F.      Payment of the Requested Expenses and Costs is Fair and Reasonable**

75.      Lead Counsel is also moving for payment of $30,608.91 in litigation expenses reasonably and actually incurred in connection with commencing and prosecuting the claims against Defendants, as outlined in the accompanying declarations and summarized below.  *See* Exs. D and E.  Plaintiffs' Counsel advanced all of the litigation expenses.  Pursuant to the Preliminary Approval Order, Lead Counsel notified Settlement Class members that they would seek a maximum of $65,000 in expenses.  *See, e.g.*, Ex. A-2 (Notice).  Thus, Plaintiffs' Counsel's requested expenses, when combined with Plaintiffs' request for an incentive award, is more than $30,000.00 lower than the maximum $65,000 listed in the Notice.

| LAW FIRM | EXPENSES |
|---|---|
| Bragar Eagel | $29,858.91 |
| James Dodge | $750.00 |
| **TOTAL EXPENSES** | **$30,608.91** |

76.      The expenses requested are reflected in the records of Plaintiffs' Counsel, prepared in the normal course of business and are an accurate record of the expenses incurred.  *See* Exs. D and E.  The expenses noted are reasonable and were incurred for items necessary to the prosecution of the Action.  The expenses were incurred largely in conjunction with experts, mediation, private investigation, and court costs.  These expenses were all incurred for the benefit of the Settlement Class, and as explained in the Fee Motion, are of the type generally billed to, and reimbursed by, private clients.

77.      From the beginning of the case, Plaintiffs' Counsel were aware that they might never recover any of their expenses, and, at the very least, would not recover anything until the

Action was successfully resolved.  Plaintiffs' Counsel also understood that, even assuming the case was ultimately successful, reimbursement for expenses would not compensate them for the lost use of funds advanced by them to prosecute this Action.  Thus, Plaintiffs' Counsel were motivated to, and did, take steps to assure that only necessary expenses were incurred for the vigorous and efficient prosecution of the case.

78.    In view of the complex nature of the Action, the litigation expenses incurred were reasonable and necessary to pursue the interests of the Settlement Class.  Accordingly, Lead Counsel respectfully submit that the request for expenses be granted.

## VIII.  PLAINTIFFS' REQUEST FOR AWARDS IS REASONABLE AND SHOULD BE APPROVED

79.    Pursuant to the PSLRA (15 U.S.C. § 78u-4(a)(4)), Plaintiffs each seek modest reimbursement awards of $1,750.00 in recognition of their time and effort expended as Class representatives.

80.    As detailed in the Plaintiffs' declarations, each actively participated in the litigation by, *inter alia*: (i) regularly communicating with Lead Counsel concerning the Action; (ii) remaining fully informed about developments in the case; (iii) reviewing pleadings and other materials filed with the Court; (iv) consulting with Lead Counsel regarding pursuing mediation, the overall settlement prospects and objectives, and status of the parties' negotiations; and (v) approving the Settlement.  Exs. B and C at ¶ 4.

81.    Plaintiffs should be compensated for their time and efforts in participating in this litigation.  Courts routinely grant substantial awards to lead plaintiffs as fully detailed in the Fee Motion.  Plaintiffs conferred substantial benefit upon the Settlement Class due to their significant efforts as identified in the paragraph above and in their declarations.  Thus, Lead Counsel believes

22

the requested awards of $1,750.00 each ($3,500.00 in total) for their time and efforts spent on behalf of the Class would be fair and reasonable.

## IX.   CONCLUSION

82.    In view of the significant recovery to the Settlement Class, the substantial risks of this litigation, the substantial efforts of Plaintiffs' Counsel, the quality of the work performed, the contingent nature of the fee, and the standing and experience of Plaintiffs' Counsel, Plaintiffs and Lead Counsel respectfully submit that: the Settlement should be finally approved as fair, reasonable, and adequate; the Plan of Allocation should be approved as fair and reasonable; the Settlement Class be finally certified for settlement purposes only; a fee in the amount of 33 and 1/3% of the Settlement Fund should be awarded to Plaintiffs' Counsel; litigation expenses in the amount of $30,608.91 should be reimbursed in full; and Plaintiffs should be awarded $1,750.00 each for their costs, time, and efforts expended on behalf of the Class.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 31, 2022.

_____
Lawrence P. Eagel

23

**CERTIFICATE OF SERVICE**

I certify that on this 31st day of March, 2022, I electronically filed the Declaration of Lawrence P. Eagel in Support of (1) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement, Plan of Allocation, and Certification of Settlement Class; and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses using the Court's CM/ECF system, which will be sent electronically to all counsel of record.

/s/ *Mitchell A. Stephens*
Mitchell A. Stephens

24