Mark F. James (5295)
Mitchell A. Stephens (11775)
JAMES DODGE RUSSELL & STEPHENS, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
        mjames@jdrslaw.com
        mstephens@jdrslaw.com

*Counsel for Lead Plaintiffs and the Class*

[Additional counsel listed on signature page]

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| IN RE VIVINT SOLAR, INC. SECURITIES LITIGATION | **LEAD PLAINTIFFS' UNOPPOSED MOTION FOR AUTHORIZATION TO DISTRIBUTE NET SETTLEMENT FUND AND SUPPORTING MEMORANDUM**<br><br>Case No. 2:20-cv-00919-JNP-CMR<br><br>District Judge: Jill N. Parrish |

**TABLE OF CONTENTS**

I.    BACKGROUND ..................................................................................................2

II.    CLAIMS ADMINISTRATION.........................................................................3

III.    DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND .................................6

IV.    THE COURT SHOULD APPROVE PAYMENT OF ADMINISTRATION-
RELATED FEES AND EXPENSES ...................................................................9

V.    RELEASE OF CLAIMS.....................................................................................9

VI.    RECORDS RETENTION AND DISTRIBUTION .........................................................10

VII.    CONCLUSION...................................................................................................11

i

**TABLE OF AUTHORITIES**

**Cases**

*In re Crocs, Inc. Sec. Litig.*,
   No. 1:07-cv-02351-PAB-KLM, 2018 U.S. Dist. LEXIS 35646 (D. Colo. Mar. 5,
   2018) ...................................................................................................................................6, 9

*In re Gypsum Antitrust Cases*,
   565 F.2d 1123 (9th Cir. 1977) ..........................................................................................6

*In re OCZ Tech. Grp., Inc. Sec. Litig.*,
   No. 3:12-CV-05265-RS, 2016 U.S. Dist. LEXIS 190247 (N.D. Cal. Mar. 11, 2016) .............6

*In re Oppenheimer Rochester Funds Group Sec. Litig.*,
   No. 09-md-02063 (D. Colo. Mar. 2, 2015)...................................................................10, 11

*In re Spectranetics Corp. Sec. Litig.*,
   No. 1:08-cv-2048-REB-KLM (D. Colo. July 13, 2012)..........................................................6

**Other Authorities**

MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.47 (1995) ........................................................6

ii

Pursuant to the Parties' Stipulation and Agreement of Settlement dated November 4, 2021 (ECF No. 87-2) (the "Stipulation" or the "Settlement"), Lead Plaintiffs Billy Wallace and Kyu S. Jang (together, "Plaintiffs"), on behalf of themselves and the Settlement Class, hereby respectfully move this Court for an order: (i) approving the Court-appointed Claims Administrator A.B. Data, Ltd.'s ("A.B. Data") administrative determinations concerning the acceptance and rejection of Claims submitted in connection with the Settlement of the Action; (ii) directing distribution of the Net Settlement Fund, after deduction of the payments requested herein, to Authorized Claimants; (iii) approving payment of A.B. Data's fees and expenses incurred and estimated to be incurred in the administration of the Settlement; (iv) authorizing the destruction of Claim Forms and supporting documents at an appropriate time; (v) releasing claims related to the administration process; and (vi) granting such other and further relief as this Court deems appropriate.[1]

This unopposed[2] motion is made upon the Ewashko Declaration, which sets forth A.B. Data's work in (i) the dissemination of Notice and Claim Forms; (ii) procedures followed in processing proofs of claim; (iii) the deficiency process; (iv) quality assurance, fraud prevention, and regulatory compliance; (v) claims determination; (vi) the distribution plan for the Net Settlement Fund; (vii) fees and disbursements; and (viii) records retention and destruction.

---

[1] The proposed distribution plan for the Net Settlement Fund ("Distribution Plan") is set forth in the accompanying Declaration of Jack Ewashko on Behalf of A.B. Data, Ltd. In Support Of Lead Plaintiffs' Unopposed Motion For Authorization to Distribute Net Settlement Fund ("Ewashko Declaration" or "Ewashko Decl."). Unless otherwise indicated, all capitalized terms shall have the same meaning as set forth in the Stipulation or the Ewashko Declaration, and all emphasis is added, all internal quotations and citations are omitted. All citations to "¶___" are to paragraphs in the Ewashko Declaration.

[2] Lead Counsel has conferred with Defendants, and Defendants do not oppose this Motion.

## I.   BACKGROUND

The November 4, 2021 Stipulation entered into by Plaintiffs and Defendants sets forth the terms of the Settlement, which represents a complete resolution of this Action.  Pursuant to the terms of the Settlement, a cash payment of $1,250,000 was deposited in escrow for the benefit of the Settlement Class.

A.B. Data, a firm specializing in the administration of class action settlements was retained to supervise and administer the notice procedure, process the Claim Forms submitted, and to effectuate the distribution of the Net Settlement Fund to Authorized Claimants, and the Court approved the selection of A.B. Data in the Order Granting Preliminary Approval of Class Action Settlement ("Preliminary Approval Order") on November 30, 2021.  *See* ECF No. 88.  In accordance with the Preliminary Approval Order, A.B. Data mailed Postcard Notice to 21,330 potential Settlement Class Members, published the Summary Notice in *Investor's Business Daily* and transmitted it over *PR Newswire*, and created and maintains a toll-free help line and website dedicated to the Action and the Settlement to assist Settlement Class Members and potential claimants during the course of the administration.  ¶ 2.

On May 9, 2022, the Court entered an Order Approving Plan of Allocation as providing a fair and reasonable basis upon which to allocate the Net Settlement Fund among Settlement Class Members.  ECF No. 98.  That same day, the Court entered a Final Order and Judgment affirming that the provisions of the Preliminary Approval Order as to notice were complied with, and approving the Settlement as fair, reasonable, and adequate.  ECF No. 100.

Lead Counsel now respectfully requests that the Court approve the administrative determinations made by A.B. Data, authorize distribution of the Net Settlement Fund to

Authorized Claimants, and approve A.B. Data's request for remaining payment for administrative efforts. As set forth in the Ewashko Declaration, in addition to providing notice, A.B. Data has processed the Claim Forms and calculated recognized loss amounts consistent with the Court-approved Plan of Allocation. *See generally*, Ewashko Decl. A.B. Data has processed 3,801 Claims received through November 20, 2022. ¶ 8. Of these 3,801 Claims, a total of 3,624 Claims were received or postmarked on or before the Court-approved claims submission deadline of June 4, 2022, of which 1,996 Claims were determined by A.B. Data to be valid and are being recommended for acceptance by the Court, a total of 177 Claims were received or postmarked after the Court-approved claims submission deadline of June 4, 2022, but received by November 20, 2022, of which 25 Claims were determined by A.B. Data to be otherwise valid and are being recommended for acceptance by the Court, and a total of 1,780 Claims are being recommended for rejection by the Court because they are ineligible, wholly deficient, or have no Recognized Loss. ¶¶ 32-35. Accordingly, the cash in the Net Settlement Fund is now available for distribution to Authorized Claimants in accordance with the Plan of Allocation.

## II.   CLAIMS ADMINISTRATION

### A.   Deficient and Ineligible Claims

Pursuant to the Preliminary Approval Order, all Settlement Class Members wishing to participate in the Settlement were required to submit Claim Forms by mail postmarked no later than thirty (30) calendar days after the Settlement Hearing. ECF No. 88. A.B. Data received and reviewed all submitted Claim Forms for eligibility and deficiencies and, to the extent that a Claim Form was deficient in any regard, A.B. Data notified the Claimant of the deficiency and advised on how to cure the deficiency. ¶¶ 17-24.

As of November 20, 2022, A.B. Data has received and processed a total of 3,801 claims. ¶ 32. A.B. Data processed each Claim Form, of which many had one or more defects or conditions of ineligibility (*e.g.*, not signed, not properly documented, or not indicating a purchase/acquisition of Vivint Solar common stock during the Class Period). ¶ 17. Much of A.B. Data's efforts in handling an administration involve claimant communications via letters, telephone calls, and emails so that all claimants have sufficient opportunity to cure any deficiencies and submit a complete Claim. *Id.* As of November 20, 2022, A.B. Data had mailed deficiency/ineligibility letters to claimants in connection with 422 paper or online Claims describing the defect(s) or condition(s) of ineligibility with his, her, or its Claim and advising what, if anything, was necessary to cure the defect(s) in the Claim and advising of the opportunity to correct the defect within twenty days. ¶ 18. For Electronic Claims, A.B. Data contacted the banks, brokers, nominees, and other filers who submitted their data electronically to confirm receipt of their submissions and to notify the filers of any deficiencies or Electronic Claims that were ineligible. ¶ 20. These filers were sent an email to the email address included with their Master Proof of Claim with an attached Excel spreadsheet containing detailed information associated with the accounts and indicating which of those accounts within the filing were deficient and/or rejected. *Id.*

In addition, A.B. Data also implemented a rigorous quality assurance process. ¶ 29. Supervisors and managers in A.B. Data's Quality Assurance Department performed quality assurance reviews to ensure the correctness and completeness of all Claims processed. *Id.* As part of its due diligence in processing Claims, A.B. Data also used a variety of fraud protection controls throughout the administration process to identify potential fraudulent filers. ¶ 30. These controls rely on internal methods as well as A.B. Data's database of known questionable filers, which is

4

informed by A.B. Data's years of experience as a claims administrator. *Id.* In addition, all of A.B. Data's claims processors are trained to identify any potentially inauthentic documentation when processing claims. *Id.*

### B.   Properly Documented Claims

Ultimately, as detailed in the Ewashko Declaration, A.B. Data determined that 2,021 Claims were valid and are being recommended for acceptance by the Court. ¶¶ 33-34. This total is comprised of 1,966 timely claims, with a total Recognized Loss of $1,313,525.58, and 25 Late But Otherwise Eligible Claims received or post-marked after the submission deadline of June 4, 2022, but otherwise eligible, with a total Recognized Loss of $67,457.24. *Id.* A.B. Data recommends that 1,780 Claims be rejected by the Court for the following reasons (i) 221 Claims had no purchase(s) of Vivint Solar common stock during the Class Period; (ii) 1,503 Claims did not result in a Recognized Loss pursuant to the Court-approved Plan of Allocation; (iii) 35 Claims were duplicates or replaced; (iv) 15 Claims had missing documentation; and (v) 6 Claims had uncured conditions of ineligibility. ¶ 35.

### C.   Late But Otherwise Eligible Claims

A total of 177 Claims were received or postmarked after the Court-approved claims submission deadline of June 4, 2022, but received by November 20, 2022, of which 25 Claims were determined by A.B. Data to be otherwise valid and are being recommended for acceptance by the Court. ¶ 34. The Recognized Loss for the Late But Otherwise Eligible Claims represents less than 5% of the total Recognized Losses of all Claims that A.B. Data is recommending for acceptance. ¶ 27. A.B. Data has not rejected any Claim received through November 20, 2022, solely based on its late submission, and Lead Counsel and A.B. Data believe no delay has resulted from the provisional acceptance of these Late But Otherwise Eligible Claims. *Id.* Moreover, the

5

Court has discretion to grant late but otherwise eligible claims. *See, e.g.*, *In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1128 (9th Cir. 1977); *In re Crocs, Inc. Sec. Litig.*, No. 1:07-cv-02351-PAB-KLM, 2018 U.S. Dist. LEXIS 35646, at *7 (D. Colo. Mar. 5, 2018) (approving late but otherwise authorized claims); *In re Spectranetics Corp. Sec. Litig.*, No. 1:08-cv-2048-REB-KLM, ECF No. 182 at p. 2, ¶2 (D. Colo. July 13, 2012) (same); MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.47 at 248 (1995) ("Adequate time should be allowed for late claims before any refund or other disposition of settlement fund occurs.").

However, there must be a final cutoff date after which no more Claims may be accepted so that there may be a proportional distribution of the Net Settlement Fund. *See Crocs*, 2018 U.S. Dist. LEXIS, at *10 (approving a cutoff date); *Spectranetics*, No. 1:08-cv-2048, ECF No. 182 at p. 2, ¶5 (same). *See also Gypsum*, 565 F.2d at 1127 (in the distribution of a large class action settlement fund, 'a cutoff date is essential and at some point the matter must be terminated'"); *In re OCZ Tech. Grp., Inc. Sec. Litig.*, No. 3:12-CV-05265-RS, 2016 U.S. Dist. LEXIS 190247, at *8 (N.D. Cal. Mar. 11, 2016) (approving a cutoff date). Acceptance of additional Claims or responses to letters regarding a Claim's deficiencies or ineligibility received during the finalization of the administration and the preparation of this Declaration would necessarily require a delay in the distribution. ¶ 28. Accordingly, it is respectfully requested that this Court order that no Claim received or adjusted in response to a letter regarding a Claim's deficiencies or ineligibility after November 20, 2022, be eligible for payment in the Initial Distribution.

## III.   DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND

Pending the Court's approval, A.B. Data will distribute the Net Settlement Fund pursuant to the Distribution Plan. ¶ 38. Under the proposed Distribution Plan, A.B. Data will conduct an

Initial Distribution of Net Settlement Fund, after deducting all payments previously approved by the Court and those requested in Lead Plaintiffs' motion, and after deducting any taxes, the costs of preparing appropriate tax returns, and any escrow fees as follows. A.B. Data will calculate award amounts to all Authorized Claimants by calculating their *pro rata* shares of the Net Settlement Fund in accordance with the Court-approved Plan of Allocation. ¶ 38(a)(i). A.B. Data will eliminate, pursuant to the terms of the Plan of Allocation, any Authorized Claimants whose distribution payment calculates to less than $10.00, as these claimants will not receive any distribution from the Net Settlement Fund. ¶ 38(a)(ii). A.B. Data will then recalculate, in accordance with the Court-approved Plan of Allocation, the *pro rata* distribution payments for Authorized Claimants that would receive $10.00 or more. ¶ 38(a)(iii). A.B. Data will then conduct the Initial Distribution of the Net Settlement Fund in accordance with the Court's Order. ¶ 38(a)(iv).

To encourage Authorized Claimants to promptly deposit their payments, and to avoid or reduce future expenses relating to uncashed checks, all Initial Distribution checks will bear a notation: "DEPOSIT PROMPTLY; VOID AND SUBJECT TO REDISTRIBUTION IF NOT NEGOTIATED WITHIN 90 DAYS OF DISTRIBUTION." ¶ 38(a)(v). In an effort to have as many Authorized Claimants as possible cash their checks, A.B. Data will perform follow-up with those Authorized Claimants whose checks are initially uncashed, either because they are returned to A.B. Data as undeliverable or because the Authorized Claimant simply did not cash the check after a period of time elapses, as detailed in the Ewashko Declaration. ¶ 38(a)(v) n4.

Authorized Claimants that do not negotiate their Initial Distribution checks within the time allotted or according to the conditions set forth in in the Ewashko Declaration will irrevocably

7

forfeit all recovery from the Settlement. ¶ 38(a)(vi). The funds allocated to all such stale-dated checks will be available for redistribution to other Authorized Claimants in the Second Distribution described below. *Id.* Similarly, Authorized Claimants that do not negotiate subsequent distributions within the time allotted or according to the conditions set forth in Ewashko Declaration will irrevocably forfeit any further recovery from the Settlement. *Id.*

After A.B. Data has made reasonable and diligent efforts to have Authorized Claimants negotiate their Initial Distribution checks, in accordance with the Court-approved Plan of Allocation, if any funds then remain in the Net Settlement Fund by reason of uncashed checks, or otherwise, nine (9) months after the Initial Distribution, A.B. Data, in consultation with Lead Counsel, will, if cost-effective to do so, redistribute such funds to Authorized Claimants who have cashed their Initial Distribution checks and who would receive at least $10.00 from such redistribution, after payment of any unpaid fees and expenses incurred in administering the Settlement, including for such redistribution. ¶ 38(b). Additional redistributions of balances remaining in the Net Settlement Fund to Authorized Claimants who have cashed their prior checks and who would receive at least $10.00 on such additional redistributions may occur thereafter if Lead Counsel, in consultation with A.B. Data, determines that additional redistributions, after payment of any unpaid fees and expenses incurred in administering the Settlement, including for such redistributions, would be cost-effective. ¶ 38(c).

If any balance still remains in the Net Settlement Fund that, after further distributions, is not cost-effective to reallocate, the remaining balance, after payment of any unpaid fees and expenses incurred in administering the Settlement, shall be contributed to a nonsectarian, not-for-profit organization, to be recommended by Lead Counsel and approved by the Court. ¶ 38(d).

**IV.  THE COURT SHOULD APPROVE PAYMENT OF ADMINISTRATION-RELATED FEES AND EXPENSES**

In accordance with A.B. Data's agreement with Lead Counsel to act as the Court-appointed Claims Administrator for the Settlement, A.B. Data was responsible for, among other things, disseminating notice of the Settlement to the Settlement Class, creating and maintaining a website and toll-free telephone helpline, processing Claims, and allocating and distributing the Net Settlement Fund to Authorized Claimants.  ¶ 2.  The cost of the administration for this project through December 30, 2022 is $112,032.97.  ¶ 37.  To date, A.B. Data has received payment of $106,291.12.  *Id.*  The estimate to conduct the initial distribution is $11,882.66.  *Id*.  Therefore, Lead Counsel respectfully request approval to pay A.B. Data $17,624.51, consisting of $5,741.85 for fees and expenses actually accrued, and $11,882.66 in anticipation of the work that will be performed in conjunction with the initial distribution.[3]  *Id.*

**V.  RELEASE OF CLAIMS**

To allow the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from any and all claims arising out of said involvement.  *See e.g.*, *Crocs*, 2018 U.S. Dist. LEXIS 35646, at *9 ("All persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise

---

[3]  If the estimated fees and expenses to conduct the initial distribution is greater than the actual cost, the excess will be returned to the Net Settlement Fund.

involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, are released and discharged from any and all claims arising out of such involvement…"); *In re Oppenheimer Rochester Funds Group Sec. Litig.*, No. 09-md-02063, ECF No. 541 at pp. 4-5, ¶8 (D. Colo. Mar. 2, 2015) ("Class Members, whether or not they are to receive payment from the Net Settlement Funds, are barred from making any further Claim against the Net Settlement Funds or the released persons beyond the amount allocated to them pursuant to this Order.").

Accordingly, Lead Plaintiffs respectfully request that the Court release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted in connection with the Settlement, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund from all claims arising out of that involvement, and bar all Settlement Class Members and other Claimants, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Lead Plaintiffs, Lead Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Lead Plaintiffs or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or any other person released under the Settlement beyond the amounts allocated to Authorized Claimants.

## VI.    RECORDS RETENTION AND DISTRIBUTION

Lead Counsel respectfully request that A.B. Data be permitted, in no less than one year after the Initial Distribution, to destroy paper copies of the Claims and all supporting documentation, and in no less than one year after all funds have been distributed, to destroy the

corresponding electronic copies of the same.  ¶38(e).  *See Oppenheimer*, No. 09-md-02063, ECF

No. 541 at p. 5, ¶9 (approving same).

## VII.   CONCLUSION

For the foregoing reasons, and the Claims Administrator's declaration submitted herewith,

Lead Plaintiffs respectfully request that their unopposed Motion be granted.

DATED: January 18, 2023                                Respectfully submitted,

                                                                **JAMES DODGE RUSSELL & STEPHENS P.C.**

                                                                */s/ Mitchell A. Stephens*
                                                                Mitchell A. Stephens
                                                                Mark F. James
                                                                10 West Broadway, Suite 400
                                                                Salt Lake City, Utah 84101
                                                                Tel.: (801) 363-6363
                                                                mstephens@jdrslaw.com
                                                                mjames@jdrslaw.com

                                                                **BRAGAR EAGEL & SQUIRE, P.C.**
                                                                Lawrence P. Eagel (admitted *pro hac vice*)
                                                                Marion C. Passmore (admitted *pro hac vice*)
                                                                810 Seventh Avenue, Suite 620
                                                                New York, NY 10019
                                                                Tel: (212) 308-5858
                                                                Fax: (212) 214-0506
                                                                eagel@bespc.com
                                                                passmore@bespc.com

                                                                *Lead Counsel for Lead Plaintiffs Billy Wallace and*
                                                                *Kyu S. Jang and the Class*

11

## CERTIFICATE OF SERVICE

I certify that on this 18th day of January, 2023, I electronically filed Lead Plaintiffs' Unopposed Motion for Authorization to Distribute Net Settlement Fund and Supporting Memorandum using the Court's CM/ECF system, which will be sent electronically to all counsel of record.

/s/*Mitchell A. Stephens*
Mitchell A. Stephens