Mark F. James (5295)
Mitchell A. Stephens (11775)
JAMES DODGE RUSSELL & STEPHENS, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
        mjames@jdrslaw.com
        mstephens@jdrslaw.com

*Counsel for Lead Plaintiffs and the Class*

[Additional counsel listed on signature page]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| IN RE VIVINT SOLAR, INC. SECURITIES LITIGATION | **DECLARATION OF JACK EWASHKO ON BEHALF OF A.B. DATA, LTD. IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR AUTHORIZATION TO DISTRIBUTE NET SETTLEMENT FUND** |
| | Case No. 2:20-cv-00919-JNP-CMR |
| | District Judge: Jill N. Parrish |

I, Jack Ewashko, declare as follows:

1.    I am a Client Services Director of A.B. Data, Ltd.'s Class Action Administration Company ("A.B. Data"), whose corporate office is located in Milwaukee, Wisconsin. I am over 21 years of age and am not a party to the above-captioned action. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

2.    Pursuant to the Court's November 30, 2021 Order Granting Preliminary Approval of Class Action Settlement (the "Preliminary Approval Order") (ECF No. 88), A.B. Data was

authorized to act as the Claims Administrator in connection with the Settlement. Since that time, A.B. Data has, among other things: (i) mailed the Postcard Notice to 21,330 potential Settlement Class Members and/or nominees; (ii) created and maintains a toll-free help line and website dedicated to the Action and the Settlement to assist Settlement Class Members and potential claimants during the course of the administration; (iii) caused the Summary Notice to be published; (iv) received and processed Claims submitted in connection with the Settlement; and (v) calculated claimants' Recognized Loss pursuant to the Court-approved Plan of Allocation.

3.      On May 9, 2022, the Court issued the Final Order and Judgment (ECF No. 100) granting final approval to the Settlement reached in the Action.

4.      A.B. Data has completed processing all Claims received through November 20, 2022[1], in accordance with the Stipulation and the Court-approved Plan of Allocation, and hereby submits its administrative determinations accepting and rejecting those Claims in preparation for distribution of the Net Settlement Fund to Authorized Claimants.

## PROCEDURES FOLLOWED IN PROCESSING CLAIMS

5.      Under the terms of the Preliminary Approval Order and as set forth in the Notice, each Settlement Class Member who wished to be eligible to receive a distribution from the Net Settlement Fund was required to complete and submit to A.B. Data a properly executed Proof of Claim postmarked or received no later than June 4, 2022, together with adequate supporting

---

[1] In anticipation of completing the administration of the Settlement, A.B. Data, in consultation with Lead Counsel, determined a cut-off of November 20, 2022, after which no additional Claims would be processed or considered for inclusion in the Initial Distribution (as defined herein) of the Net Settlement Fund. This is done so that there may be a timely distribution of the Net Settlement Fund.

documentation for the transactions and holdings reported therein. Through November 20, 2022, A.B. Data has received and fully processed 3,801 Claims.

6. In preparation for receiving and processing Claims, A.B. Data: (i) created a unique database to store Claim details and images of Claims and supporting documentation (the "Settlement Database"); (ii) trained staff members in the specifics of the Settlement so that Claims would be properly processed; (iii) formulated a system so that inquiries regarding this matter would be properly responded to; (iv) developed various computer programs and screens for entry of claimants' identifying information, as well as their transactional information; and (v) developed a proprietary "calculation module" that would calculate Recognized Losses pursuant to the Court-approved Plan of Allocation.

7. Settlement Class Members seeking to share in the Net Settlement Fund were directed in the Postcard Notice to submit their Claims online via the Settlement website or by paper claim to a post office box address specifically designated for the Settlement. Postcard Notices that were returned by the post office as undeliverable were reviewed for updated addresses and, where available, new addresses were entered into the Settlement Database and new Postcard Notices were mailed to the updated addresses. All correspondence received at the post office box was reviewed and, where necessary, appropriate responses were provided to the senders.

<b><u>PROCESSING PAPER OR ONLINE CLAIMS</u></b>

8. Of the 3,801 Claims received by A.B. Data through November 20, 2022, 34 were "hard-copy" or "paper" Claims and 522 were "online" Claims received through the online

3

filing component of the settlement website.[2] Once received, paper Claims were opened and prepared for scanning. This process includes unfolding documents, removing staples, copying nonconforming-sized documents, and sorting documents. Once prepared, paper Claims were scanned into the Settlement Database together with all submitted documentation. Subsequently, each Proof of Claim was assigned a unique Proof of Claim number. Once scanned, the information from each Proof of Claim, including the claimant's name, address, the account number/information from the claimant's supporting documentation, and the claimant's purchase/acquisition transactions, sale transactions, and holdings listed on the Proof of Claim, was entered into the Settlement Database. Next, the information and documentation provided by each claimant in support of his, her, or its Proof of Claim was reviewed to determine whether the claimant had purchased Vivint Solar common stock between March 5, 2019 and September 26, 2019, inclusive (the "Class Period").

9.      In order to process the transactions detailed in the Claims, A.B. Data utilized internal codes ("flags") to identify and classify types of Claims and any deficiency or ineligibility conditions that existed within those Claims. The appropriate flags were assigned to the Claims as they were processed. For example, where a Claim was submitted by a claimant that did not have any eligible transactions in Vivint Solar common stock during the Settlement Class Period (*e.g.*, the claimant purchased Vivint Solar common stock after the Class Period), that Proof of Claim would receive a flag that denoted ineligibility. Similar flags were used to denote other ineligibility conditions, such as duplicate Claims. These flags would indicate to A.B. Data that the claimant

---

2 The remainder of the Claims, which were submitted electronically by institutions and other third-party filers, are addressed below.

was not eligible to receive any payment from the Net Settlement Fund with respect to that Claim unless the deficiency was resolved in its entirety. Examples of conditions of ineligibility include the following:

| | |
|---|---|
| MIDOC | Inadequate or Missing Documentation for Entire Proof of Claim |
| DUPCL | Duplicate Proof of Claim |
| NOPUR | No Eligible Purchases/Acquisitions During the Settlement Class Period |
| MISIG | No Signature |
| NOLOS | No Recognized Loss |

10.     Because a Claim may be deficient only in part, but otherwise acceptable, A.B. Data also utilized flags that were applied only to specific transactions within a Claim. For example, if a claimant submitted a Claim with supporting documentation for all but one purchase transaction, that one transaction would receive a transaction-specific flag. That flag indicated that one transaction was deficient, but the Claim was otherwise eligible for payment if other transactions in the Claim calculated to a Recognized Loss pursuant to the Court-approved Plan of Allocation. Thus, even if the transaction-specific deficiency was never cured, the acceptable portion of the Claim could still be paid. A few examples of transaction-specific deficiencies are as follows:

| | |
|---|---|
| COUB | Claim Is Out of Balance |
| INDOC | Missing or Inadequate Documentation for Specific Transaction |
| INEL | Ineligible Transaction |
| TRN | Transfer In/Free Receipt |

## PROCESSING ELECTRONICALLY FILED CLAIMS

11.     Of the 3,801 Claims received by A.B. Data through November 20, 2022, 3,245 were submitted electronically ("Electronic Claims") to A.B. Data's Electronic Claim Filing Team ("ECF Team"). Electronic Claims are typically submitted by institutional investors ("Electronic Claim Filers" or "E-Claim Filers") that may have hundreds or thousands of transactions during the relevant period. Rather than provide reams of paper requiring data entry, the E-Claim Filers submitting Electronic Claims either mail a computer disc or electronically submit a file to A.B. Data so that A.B. Data may upload all transactions to the Settlement Database.

12.     The ECF Team coordinated and supervised the receipt and handling of all Electronic Claims. In this case, the ECF Team reviewed and analyzed each electronic file to ensure that it was formatted in accordance with A.B. Data's required format and to identify any potential data issues or inconsistencies within the file. If any issues or inconsistencies arose, A.B. Data notified the sender. If the electronic file was deemed to be in an acceptable format, it was then uploaded to the Settlement Database.

13.     Once the electronic file was loaded, the Electronic Claims were flagged to denote any deficient or ineligible conditions that existed within them. The flags applied to the Electronic Claims are similar to those applied to paper Claims; however, in lieu of manually applying flags, the ECF Team performed programmatic reviews on Electronic Claims to identify deficient and ineligible conditions (such as, but not limited to, price-out-of-range issues, out-of-balance conditions, and transactions outside the Settlement Class Period). The appropriate flags were then assigned programmatically once the output of the reviews was thoroughly analyzed and confirmed for accuracy.

14.     The review process also included flagging any Electronic Claims that were not accompanied by a signed Proof of Claim, which serves as a "Master Proof of Claim" for all accounts referenced on the electronic file submitted. Where appropriate, A.B. Data contacted the E-Claim Filers whose submissions were missing information. This process ensures that only fully completed Claims, submitted by properly authorized representatives of the claimants, are considered eligible for payment from the Net Settlement Fund.

15.     Finally, at the end of the process, A.B. Data performed various targeted reviews of Electronic Claims, including reviews of high-value Claims. These targeted reviews help to ensure that electronic data supplied by claimants does not contain inaccurate information.

## EXCLUDED PERSONS AND ENTITIES

16.     A.B. Data also reviewed the Claims to ensure that they were not submitted by, or on behalf of, persons or entities that were excluded from the Settlement Class by definition to the extent that the identities of such persons or entities were known to A.B. Data through the list of Defendants and other excluded persons and entities set forth in the Stipulation and the Notice of Pendency and Proposed Settlement of Class Action (the "Notice"), and through the claimants' certifications on the Claims. A.B. Data did not identify any Claims as being submitted on behalf of an excluded party.

## THE DEFICIENCY PROCESS

17.     Many of the Claims received by A.B. Data for processing were incomplete or had one or more defects or conditions of ineligibility (*e.g.*, not signed, not properly documented, or not indicating a purchase/acquisition of Vivint Solar common stock during the Class Period). Much of A.B. Data's efforts in handling an administration involve claimant communications so that all

claimants have sufficient opportunity to cure any deficiencies and submit a complete Claim. Here, the "Deficiency Process," which involved letters to claimants, as well as telephone calls and emails, was intended to assist claimants in properly completing their otherwise deficient or ineligible submissions so that they would be eligible to participate in the Settlement. As a result of the Deficiency Process, a significant number of claimants who submitted Claims with curable deficiencies are now in good standing and are eligible to participate in the Settlement.

### DEFICIENCY PROCESS FOR PAPER OR ONLINE CLAIMS

18.    If a paper or online Claim was determined to be deficient or ineligible, A.B. Data mailed a letter to the claimant describing the defect(s) or condition(s) of ineligibility with his, her, or its Claim and advising what, if anything, was necessary to cure the defect(s) in the Claim. The letter informed the claimant that they were required to submit the appropriate information and/or documentary evidence to complete the Claim within twenty (20) days from the date of the letter or the Claim would be recommended for rejection to the extent the deficiency(ies) or condition(s) of ineligibility was (were) not cured. The letter also informed claimants of their right to request the Court's review of their Claim if they contested A.B. Data's administrative determination to reject their Claim in whole or in part. The letters explained that any claimant desiring to contest A.B. Data's administrative determination was required to submit a written statement to A.B. Data requesting Court review of their Claim and setting forth the basis for the request. To date, A.B. Data has mailed deficiency/ineligibility letters to claimants in connection with 422 paper or online Claims. A sample deficiency/ineligibility letter is attached hereto as Exhibit A.

19.    Claimants' responses to the deficiency/ineligibility letters were scanned into the Settlement Database and associated with the corresponding Claims. The responses were then

carefully reviewed and evaluated by A.B. Data's team of processors. If a claimant's response corrected the defect(s) in their Proof of Claim, A.B. Data updated the Settlement Database manually to reflect the change(s) in the status of the Claim.

## DEFICIENCY PROCESS FOR ELECTRONIC CLAIMS

20.     For Electronic Claims, A.B. Data used the following process to contact the banks, brokers, nominees, and other filers who submitted their data electronically to confirm receipt of their submissions and to notify the filers of any deficiencies or Electronic Claims that were ineligible. These filers were sent an email to the email address included with their Master Proof of Claim ("Status Email") with an attached Excel spreadsheet containing detailed information associated with the accounts and indicating which of those accounts within the filing were deficient and/or rejected ("Status Spreadsheet").

21.     Each Status Email (a sample of which is attached hereto as Exhibit B) provided the following:

(a)     Notified the filer that any Electronic Claim(s) with deficiencies not corrected within twenty (20) days from the date of the Status Email may be rejected;

(b)     Advised the filer of the right to contest the rejection of the Electronic Claim(s) and request the Court's review of A.B. Data's administrative determinations to reject the Electronic Claim(s) within twenty (20) days from the date of the Status Email; and

(c)     Provided instructions for submitting corrections.

9

22.    Each Status Spreadsheet (a sample of which is attached hereto as <u>Exhibit C</u>) emailed to the email address associated with the Master Proof of Claim contained the following information:

    (a)    A listing of all accounts associated with the filing with unique identification numbers;

    (b)    Individual accounts that were found to be deficient or ineligible;

    (c)    The current status of the accounts in A.B. Data's Settlement Database; and

    (d)    The current Recognized Loss calculation associated with the accounts.

23.    A.B. Data emailed a Status Email and Status Spreadsheet to 93 E-Claim Filers.

24.    E-Claim Filers' responses to the Status Emails and Spreadsheets were reviewed by A.B. Data's ECF Team, scanned and/or loaded into A.B. Data's Settlement Database, and were associated with the corresponding Electronic Claims. If a response corrected the defect(s) or affected the Electronic Claim's status, A.B. Data manually and/or programmatically updated the Settlement Database to reflect the change(s) in the status of the Electronic Claim.

## DISPUTED CLAIMS

25.    As noted above, claimants were advised that they had the right to contest A.B. Data's administrative determinations with respect to the deficiencies in or ineligibility of their Proofs of Claim within twenty (20) days from the date of notification and that they could request that the dispute be submitted to the Court for review. More specifically, claimants were advised that if they disputed A.B. Data's administrative determinations, they had to provide a statement indicating the grounds for contesting the determination, along with supporting

documentation, and if the dispute concerning the Proof of Claim could not otherwise be resolved, Lead Counsel would thereafter present the request for review to the Court for a final determination.

26.    In response to the notifications of deficient or ineligible Proofs of Claim, there are no disputed claims.

<u>**LATE BUT OTHERWISE ELIGIBLE CLAIMS**</u>

27.    Through November 20, 2022, A.B. Data has received 177 Claims that were postmarked after the June 4, 2022, claim submission deadline established by the Court. A.B. Data has processed all late Claims received through November 20, 2022, and has determined that, but for their being submitted after the deadline, 25 of these late Claims are eligible in whole or in part to participate in the Settlement (the "Late But Otherwise Eligible Claims"), representing Recognized Losses totaling $67,457.24. The Recognized Loss for the Late But Otherwise Eligible Claims represents less than 5% of the total Recognized Losses of all Claims that A.B. Data is recommending for acceptance. A.B. Data has not rejected any Claim received through November 20, 2022, solely based on its late submission, and A.B. Data believes no delay has resulted from the provisional acceptance of these Late But Otherwise Eligible Claims. To the extent these Claims are eligible but for the fact that they were late, they are recommended herein for payment.

28.    However, there must be a final cutoff date after which no more Claims will be accepted for processing and inclusion in the Initial Distribution of the Net Settlement Fund. Acceptance of additional Claims or responses to letters regarding a Claim's deficiencies or ineligibility received during the finalization of the administration and the preparation of this Declaration would necessarily require a delay in the distribution. Accordingly, it is respectfully requested that this Court order that no Claim received or adjusted in response to a letter regarding

a Claim's deficiencies or ineligibility after November 20, 2022, be eligible for payment in the Initial Distribution.

## QUALITY ASSURANCE

29.    An integral part of the claims administration process is the quality assurance review. Here, after all of the Claims were processed, deficiency and/or ineligibility letters (including Status Emails to E-Claim Filers) were mailed or emailed, and claimants' responses to such letters/emails were reviewed and processed, supervisors and managers in A.B. Data's Quality Assurance Department performed quality assurance reviews. These quality assurance reviews ensured the correctness and completeness of all Claims processed prior to preparing this Declaration and all of A.B. Data's final documents in support of Lead Plaintiffs' Unopposed Motion for Authorization to Distribute the Net Settlement Fund. As part of A.B. Data's quality assurance reviews, A.B. Data performed the following:

(a)    Verified that all Claims were signed by authorized individuals;

(b)    Verified that true duplicate Claims were identified, verified, and rejected;

(c)    Verified that persons and entities excluded from the Settlement Class by definition did not submit Claims and if they did, their Claims were rejected upon review;

(d)    Performed a final quality assurance audit of Claims and all supporting documentation to ensure completeness of Claims;

(e)    Determined that all claimants requiring deficiency and/or ineligibility letters/emails were sent such letters/emails;

(f)    Performed an audit of deficient Claims;

12

(g)    Audited Claims that were marked invalid;

(h)    Audited Claims that calculated to no Recognized Loss pursuant to the Court-approved Plan of Allocation;

(i)    Performed other auditing based on Proof of Claim completion requirements and the calculation specifications of the Court-approved Plan of Allocation; and

(j)    Tested the accuracy of the calculation program used to calculate claimants' Recognized Losses pursuant to the Plan of Allocation.

30.    As part of its due diligence in processing Claims, A.B. Data also used a variety of fraud protection controls throughout the administration process to identify potential fraudulent filers. For example, A.B. Data conducted a Questionable Claim Filer search of all Claims submitted in connection with the Settlement by checking the Claims against A.B. Data's database of known questionable filers. This database contains names, addresses, and aliases of individuals or entities that have been investigated by government agencies for questionable claim filing, as well as the names and contact information compiled from previous settlements that A.B. Data has administered where fraudulent claims were received. A.B. Data updates the database on a regular basis. A.B. Data performed various searches of the Settlement Database based on name, aliases, address, and city/ZIP Code. In addition, all of A.B. Data's claims processors are trained to identify any potentially inauthentic documentation when processing claims. Processors are instructed to flag any questionable claims and route them to management for further review.

31.    A.B. Data's management reviewed each Claim that was flagged for further review. To date, there are no Claims flagged for further review by A.B. Data's management.

13

### RECOMMENDATION FOR APPROVAL AND REJECTION OF CLAIMS

32.     As discussed above, as of November 20, 2022, A.B. Data has received and processed a total of 3,801 Claims.

**Timely Submitted and Valid Claims**

33.     A total of 3,624 Claims were received or postmarked on or before the Court-approved claims submission deadline of June 4, 2022, of which 1,996 Claims were determined by A.B. Data to be valid and are being recommended for acceptance by the Court. The total Recognized Loss for these timely submitted and valid Claims is $1,313,525.58.

**Late But Otherwise Eligible Claims**

34.     A total of 177 Claims were received or postmarked after the Court-approved claims submission deadline of June 4, 2022, but received by November 20, 2022, of which 25 Claims were determined by A.B. Data to be otherwise valid and are being recommended for acceptance by the Court. The total Recognized Loss for these Late But Otherwise Eligible Claims is $67,457.24.

**Rejected Claims**

35.     A total of 1,780 Claims are being recommended for rejection by the Court for the following reasons:

    (a)    221 Claims had no purchase(s) of Vivint Solar common stock during the Class Period;

    (b)    1,503 Claims did not result in a Recognized Loss pursuant to the Court-approved Plan of Allocation;

    (c)    35 Claims were duplicates or replaced;

(d)     15 Claims had missing documentation; and

(e)     6 Claims had uncured conditions of ineligibility.

**Lists of All Presented Claims**

36.    Exhibits D through F attached hereto provide lists of all Claims submitted in connection with the Settlement.[3] Specifically:

(a)     Exhibit D lists all timely submitted and valid Claims and provides each claimant's corresponding Recognized Loss.

(b)     Exhibit E lists all Late But Otherwise Eligible Claims (*i.e.*, valid Claims that were received or postmarked after the Court-approved claim submission deadline of June 4, 2022, but received by November 20, 2022), and provides each claimant's corresponding Recognized Loss.

(c)     Exhibit F lists all rejected Claims and the reasons for rejection.

**FEES AND DISBURSEMENTS**

37.    A. B Data agreed to be the Claims Administrator in exchange for payment of its fees and out-of pocket expenses. Lead Counsel received reports on invoices for the work A.B. Data performed with respect to the provisions of notice and administration of the Settlement. Attached hereto as Exhibit G are copies of A.B. Data's invoices for its work performed on behalf of the Settlement Class as well as an estimate for the work that will be performed and the costs that will be incurred in connection with the initial distribution of the Net Settlement Fund. Should the estimate of fees and expenses to conduct the initial distribution of the Net Settlement Fund

---

[3] For privacy reasons, Exhibits D through F provide only the claimants' Proof of Claim numbers and Recognized Loss or reasons for rejection (no names, addresses, or Social Security or other Taxpayer Identification Numbers are disclosed).

exceed the actual cost, the excess will be returned to the Net Settlement Fund and will be available for subsequent distribution to Authorized Claimants. As set forth in these invoices, A.B. Data's total fees and expenses for this matter through December 30, 2022, are $112,032.97 A.B. Data anticipates that its fees and expenses for the work performed in conjunction with the initial distribution of the Net Settlement Fund will be $11,882.66. To date A.B. Data has received payment in the amount of $106,291.12 for its fees and expenses. Accordingly, there is an outstanding balance of $17,624.51 payable to A.B. Data from the Settlement Fund, which includes the estimate for completing the initial distribution.

## DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND

38.    Should the Court concur with A.B. Data's determinations concerning the provisionally accepted and rejected Claims, including the Late But Otherwise Eligible Claims, as set forth herein, A.B. Data recommends the following distribution plan for the Net Settlement Fund (the "Distribution Plan"):

(a)    A.B. Data will conduct an initial distribution (the "Initial Distribution") of the Net Settlement Fund, after deducting all payments previously approved by the Court and those requested in Lead Plaintiffs' motion, and after deducting any taxes, the costs of preparing appropriate tax returns, and any escrow fees, as follows:

i.   A.B. Data will calculate award amounts to all Authorized Claimants by calculating their *pro rata* shares of the Net Settlement Fund in accordance with the Court-approved Plan of Allocation.

ii.  A.B. Data will eliminate, pursuant to the terms of the Plan of Allocation,

any Authorized Claimants whose distribution payment calculates to less than $10.00. Such claimants will not receive any distribution from the Net Settlement Fund.

iii.  After eliminating claimants that would have received less than $10.00, A.B. Data will recalculate, in accordance with the Court-approved Plan of Allocation, the *pro rata* distribution payments for Authorized Claimants that would receive $10.00 or more.

iv.  A.B. Data will then conduct the Initial Distribution of the Net Settlement Fund in accordance with the Court's Order.

v.  In order to encourage Authorized Claimants to promptly deposit their payments, and to avoid or reduce future expenses relating to uncashed checks, all Initial Distribution checks will bear a notation: "DEPOSIT PROMPTLY; VOID AND SUBJECT TO REDISTRIBUTION IF NOT NEGOTIATED WITHIN 90 DAYS OF DISTRIBUTION."[4]

---

[4] In an effort to have as many Authorized Claimants as possible cash their checks, A.B. Data will perform follow-up with those Authorized Claimants whose checks are initially uncashed, either because they are returned to A.B. Data as undeliverable or because the Authorized Claimant simply did not cash the check after a period of time elapses. For Authorized Claimants whose checks are returned as undeliverable, A.B. Data will endeavor to locate new addresses by running the undeliverable addresses through address lookup services. Where a new address is located, A.B. Data will update the Settlement Database accordingly and reissue a distribution check to the Authorized Claimant at the new address. In the event an Authorized Claimant loses or damages his, her, or its check, or otherwise requires a new check, A.B. Data will issue replacements. Distribution reissues will be undertaken only upon written instructions from the Authorized Claimant, provided that the Authorized Claimant returns the previous check where appropriate. For all checks, A.B. Data will void the initial payment prior to reissuing a payment. Authorized Claimants requesting reissuance of checks will be informed that if they do not cash their Initial Distribution checks within 30 days of the mailing of such reissued checks, their check

vi.   Authorized Claimants that do not negotiate their Initial Distribution checks within the time allotted or according to the conditions set forth in footnote 4 will irrevocably forfeit all recovery from the Settlement. The funds allocated to all such stale-dated checks will be available for redistribution to other Authorized Claimants in the Second Distribution described below. Similarly, Authorized Claimants that do not negotiate subsequent distributions within the time allotted or according to the conditions set forth in footnote 4 will irrevocably forfeit any further recovery from the Settlement.

(b)   After A.B. Data has made reasonable and diligent efforts to have Authorized Claimants negotiate their Initial Distribution checks, in accordance with the Court-approved Plan of Allocation, if any funds then remain in the Net Settlement Fund by reason of uncashed checks, or otherwise, nine (9) months after the Initial Distribution, A.B. Data, in consultation with Lead Counsel, will, if cost-effective to do so, redistribute such funds to Authorized Claimants who have cashed their Initial Distribution checks and who would receive at least $10.00 from such redistribution, after payment of any unpaid fees and expenses incurred in administering the Settlement, including for such redistribution.

(c)   Additional redistributions of balances remaining in the Net Settlement Fund to

---

will lapse, their entitlement to recovery will be irrevocably forfeited, and the funds will be reallocated to other Authorized Claimants. Reissue requests for lost or damaged checks will be granted after the void date on the checks; however, void dates on such reissues will be adjusted so as not to delay future redistributions. Requests for reissued checks in connection with the Second Distribution and any subsequent distributions will be handled in the same manner.

Authorized Claimants who have cashed their prior checks and who would receive at least $10.00 on such additional redistributions may occur thereafter if Lead Counsel, in consultation with A.B. Data, determines that additional redistributions, after payment of any unpaid fees and expenses incurred in administering the Settlement, including for such redistributions, would be cost-effective.

(d)    If any balance still remains in the Net Settlement Fund that, after further distributions, is not cost-effective to reallocate, the remaining balance, after payment of any unpaid fees and expenses incurred in administering the Settlement, shall be contributed to a nonsectarian, not-for-profit organization, to be recommended by Lead Counsel and approved by the Court.

(e)    Unless otherwise ordered by the Court, one year after the Initial Distribution, A.B. Data will destroy paper copies of the Claims and all supporting documentation, and one year after all funds have been distributed, A.B. Data will destroy electronic copies of the same.

**CONCLUSION**

39.    A.B. Data respectfully requests that the Court enter an Order approving its administrative determinations accepting and rejecting the Claims submitted herein and received on or before November 20, 2022, together with the proposed Distribution Plan.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 18th day of January, 2023.

_____
Jack Ewashko